Ruth BURNS *v.* STATE of Arkansas

CR 74-52                                     512 S.W. 2d 928

Opinion delivered July 22, 1974
[Rehearing denied September 16, 1974.]

*John M. Fincher* and *Gilbert H. Deitch*, for appellant.

*Jim Guy Tucker*, Atty. Gen., by: *O. H. Hargraves*, Dep. Atty. Gen.; *Lee A. Munson*, Prosecuting Atty., and *John Wesley Hall Jr.*, Dep. Pros. Atty., for appellee.

CARLETON HARRIS, Chief Justice. Ruth Burns, appellant herein, was charged with selling obscene literature on July 6, 1973, in North Little Rock, said sales allegedly being in violation of Ark. Stat. Ann. § 41-2704 (Repl. 1964). On trial by jury in the Pulaski County Circuit Court, she was convicted, and punishment fixed at a $500.00 fine. From the judgment entered in accordance with the jury verdict, appellant brings this appeal. For reversal, it is first asserted that the Court erred in refusing to grant appellant's motion to dismiss and/or in refusing to direct a verdict in her favor.

The testimony reflected that Lieutenant William C. Lambert and Acting Lieutenant William F. Brown, both of the North Little Rock Police Department, entered "Book Store Limited No. 2" shortly after noon on July 6, 1973, observing books and magazines on the racks, and several customers in the store. Three persons made purchases while the officers were present, appellant making the sales and placing the purchases in a paper sack. Officer Lambert purchased a magazine, wrapped in cellophane, entitled "Inquiry", for which he paid appellant the sum of $7.50 plus tax. Subsequently, the aforementioned charge was filed.

It is argued that, though the sale of obscene literature is prohibited by the statute, said statute is void for vagueness in that no criteria are set forth that would give fair notice of the precise standards of criminality before the commission of the alleged offense. The pertinent portion of the statute involved reads as follows:

"Hereafter, the sale, circulation, or attempted circulation, or offer for sale, or keeping or exposing on a news stand or other place of sale any obscene, vulgar or indecent papers, books or periodicals of any kind in which is illustrated any indecent or vulgar pictures, shall be a misdemeanor and any person selling the same, or circulating the same or attempting to circulate the same, or offering the same for sale, or keeping or exposing the same on any news stand or other place of sale, or soliciting subscription for the same, shall upon conviction for the first offense be subject to a fine of not less than One Hundred Dollars ($100.00) and not more than Five Hundred Dollars ($500.00) or imprisonment in the County Jail for not less than thirty (30) nor more than sixty (60) days or both such fine and imprisonment and for the second offense a fine of not less than Five Hundred Dollars ($500.00) nor more than One Thousand Dollars ($1,000.00) and imprisonment in the County Jail for six (6) months. Upon conviction for a third offense of violating the provisions of this Act (§§ 41-2704—41-2706) such person shall be guilty of a felony and shall be subject to imprisonment in the State Penitentiary for not less than one (1) year and not more than three (3) years."

One of the principal cases relied upon by appellant is the United States Supreme Court decision in *Smith* v. *Goguen*, 415 U.S. 566, 94 S. Ct. 1242, 39 L. Ed. 2d 605, decided March 25, 1974. Goguen had been convicted in the state courts under a Massachusetts statute of treating contemptuously the flag of the United States. The statute prohibited a number of specific acts but Goguen was convicted under the phrase "or treats contemptuously", the record reflecting that he had worn a small cloth version of the United States flag sewn to the seat of his trousers, the flag being approximately 4 inches

by 6 inches and being displayed on the left rear of his blue jeans. The· Court, in declaring the statute impermissibly vague as applied to Goguen, stated:

> "There are areas of human conduct where, by the nature of the problems presented, legislatures simply cannot establish standards with great precision. Control of the broad range of disorderly conduct that may inhibit a policeman in the performance of his official duties may be one such area, requiring as it does an on-the-spot assessment of the need to keep order. Cf. Colten v. Kentucky, 407 U.S. 104, 92 S. Ct. 1953, 32 L. Ed. 2d 584 (1972). But there is no comparable reason for committing broad discretion to law enforcement officials in the area of flag contempt. Indeed, because display of the flag is so common and takes so many forms, changing from one generation to another and often difficult to distinguish in principle, a legislature should define with some care the flag behavior it intends to outlaw. Certainly nothing prevents a legislature from defining with substantial specificity what constitutes forbidden treatment of United States flags. The statutory language at issue here fails to approach that goal and is void for vagueness. "

We are unable to relate the pertinency of this holding to the case here at issue, for, as pointed out by the United States Supreme Court, the provision was vague "not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all."

On the subject of what is obscene, appellant's argument is contrary to what the United States Supreme Court said in *Roth* v. *United States,* 354 U.S. 476 (1957). It was there stated:

> "It is argued that the statutes do not provide reasonably ascertainable standards of guilt and therefore violate the constitutional requirements of due process. Winters v. New York, 333 US 507, 92 L ed 840, 68 S Ct 665. The federal obscenity statute makes punishable the mailing of material that is 'obscene, lewd, lascivious, or filthy . . .

or other publication of an indecent character.' The California statute makes punishable, inter alia, the keeping for sale or advertising material that is 'obscene or indecent.' The thrust of the argument is that these words are not sufficiently precise because they do not mean the same thing to all people, all the time, everywhere.

"Many decisions have recognized that these terms of obscenity statutes are not precise. This Court, however, has consistently held that lack of precision is not itself offensive to the requirements of due process. ' . . . The Constitution does not require impossible standards'; all that is required is that the language 'conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices . . . ' United States v. Petrille, 332 US 1, 7, 8, 91 L ed 1877, 1883, 67 S Ct 1538. These words, applied according to the proper standard for judging obscenity, already discussed, give adequate warning of the conduct proscribed and mark ' . . . boundaries sufficiently distinct for judges and juries fairly to administer the law . . . That there may be marginal cases in which it is difficult to determine the side of the line on which a particular fact situation falls is no sufficient reason to hold the language too ambiguous to define a criminal offense.' (Citing cases)

"In summary, then, we hold that these statutes, applied according to the proper standard for judging obscenity, do not offend constitutional safeguards against convictions based upon protected material, or fail to give men in acting adequate notice of what is prohibited."

In the recent case of *Hamling, et al v. United States,* [1973-1974 Transfer Binder] CCH U.S. S. Ct. Bull. B3979 (1974), decided on June 24, 1974, involving the conviction of petitioners for mailing and conspiring the mailing of an obscene advertising brochure, the Court cited *Roth*, mentioning its finding that the statute[1] did not deny the due

[1] 18 U.S.C. § 1461 provides in pertinent parts:
"Every obscene, lewd, lascivious, indecent, filthy or vile article, matter, thing, device, or substance; and ***

"Every written or printed card, letter, circular, book, pamphlet, advertise-

process guaranteed by the Fifth Amendment because "too vague to support conviction for crime" and reiterating that the statute did not fail to give adequate notice of what was prohibited.

The Court further said:

"The *Miller* cases, important as they were in enunciating a constitutional test for obscenity to which a majority of the Court subscribed for the first time in a number of years, were intended neither as legislative drafting handbooks or as manuals of jury instructions. 18 U.S.C. § 1461 had been held invulnerable to a challenge on the ground of unconstitutional vagueness in *Roth;* the language of *Roth* was repeated in *Miller,* [2] along with a description of the types of material which could constitutionally be proscribed and the adjuration that such statutory proscriptions be made explicit either by their own language or by judicial construction; and *United States* v. *12 200-ft. Reels of Film, supra,* made clear our willingness to construe federal statutes dealing with obscenity to be limited to material such as that described in *Miller.* It is plain from the Court of Appeals' description of the brochure involved here that it is a form of hard-core pornography well within the types of permissibly proscribed depictions described in *Miller,* and which we now hold § 1461 to cover. Whatever complaint the distributor of material which presented a more difficult question of obscenity *vel non* might have as

ment, or notice of any kind giving information, directly or indirectly, where, or how, or from whom, or by what means any of such mentioned matters, articles or things may be obtained or made, ****

"Is declared to be nonmailable matter and shall not be conveyed in the mails or delivered from any post office or by any letter carrier. 'Whoever knowingly uses the mails for the mailing, carriage in the mails, or delivery of anything declared by this section or by section 3001 (e) of Title 39 to be nonmailable, or knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, or knowingly takes any such thing from the mails for the purpose of circulating or disposing thereof, or of aiding in the circulation or disposition thereof, shall be fined not more than $5,000 or imprisoned not more than five years, or both, for the first such offense, and shall be fined not more than $10,-000 or imprisoned not more than ten years, or both, for each such offense thereafter.***"

[2].*Miller* v. *California,* 413 U. S. 15 (1973).

to the lack of a previous limiting construction of 18 U.S.C. § 1461, these petitioners have none. See *Dennis* v. *United States*, 341 U.S. 494, 511-515 (1951) (opinion of Vinson, C.J.)"

It would appear that the Arkansas statute is just as explicit as the federal statute just discussed, and, in fact, two of the same words, "obscene" and "indecent" are used in both statutes. As will be pointed out under the second point urged for reversal, this is not a case where a person was convicted of selling a magazine depicting only nudity[3] or suggestive conduct; rather, the material involved undoubtedly and without question reflected "hard core" sexual conduct.

It is argued by appellant that *Miller* v. *California*, 413 U.S. 15 (1973), can only be applied prospectively, and that to apply it retroactively would have an *ex post facto* effect. These same arguments were presented in *Herman, et al* v. *State*, 256 Ark. 840, 512 S.W. 2d 923 (1974), and there held to be without merit, the Court stating:

"It is next argued that the constitutionality of the Arkansas statute should be determined according to the judicial standards involved at the time of the offense, i.e., at the time of the showing of the film, our statute had not been specifically upheld. The offense was committed in September, 1973, and *Gibbs* [1] was decided in February, 1974. The important fact to be considered is that *Miller* was handed down on June 21, 1973, nearly two and one-half months before appellants allegedly violated the Arkansas obscenity statute. As pointed out by appellee, since obscenity adjudication is limited to the standards announced by the United States Supreme Court as the final arbiter of obscenity law, appellants

---

[3]On June 24, 1974, the United States Supreme Court, in *Jenkins* v. *Georgia*, [1973-1974 Transfer Binder] CCH U.S. S. Ct. Bull. B4047. (1974), reversed the Supreme Court of Georgia, holding that since the camera did not focus on the bodies of actors doing scenes of "ultimate sexual acts," nor were the genitals of actors exhibited during the scenes, the film only showing occasional nudity, the film depiction of sex conduct was not patently offensive, nudity alone not rendering material obscene under *Miller* v. *California, supra*.

[1]*Gibbs* v. *State*, 255 Ark. 997, 504 S.W. 2d 179 (1974). There, this Court applied *Miller* standards and held our statute § 41-2730 (Supp. 1973) constitutional

were certainly on notice that *Miller* could be applied to their actions.

"Let it be remembered that, following *Miller*, other obscenity cases pending were remanded to the state courts in order that those courts might review such cases in accordance with the standards set out in *Miller*. The cases remanded, of course, involved actions which were consummated *before* the *Miller* determination."

*Miller*, a decision which received wide publicity in the press and other news media, was decided two weeks before the offense here at issue was committed, and since obscenity adjudication is limited to the standards announced by the United States Supreme Court, one should have been placed on notice that our definition of the term would be in accordance with *Miller* standards.

Appellant insists that no fair warning was provided as to the meaning of the statute, this Court not having passed on § 41-2704, and cites *Bouie* v. *Columbia*, 378 U.S. 347 (1964), contending that that decision requires a reversal of the conviction. This same contention was made in *Hamling*, but the Court disagreed, stating:

"Nor do we find merit in petitioners' contention that cases such as *Bouie* v. *City of Columbia*, 378 U.S. 347 (1964), require reversal of their convictions. The Court in *Bouie* held that since the crime for which the petitioners there stood convicted was 'not enumerated in the statute' at the time of their conduct, their conviction could not be sustained. Id., at 363. The Court noted that ' a deprivation of the right of fair warning can result not only from vague statutory language but also from an unforeseeable and retroactive judicial expansion of narrow and precise statutory language.' 378 U.S., at 352. But the enumeration of specific categories of material in *Miller* which might be found obscene did not purport to make criminal, for the purpose of 18 U.S.C. § 1461, conduct which had not previously been thought criminal. That requirement instead added a 'clarifying gloss' to the prior construction and therefore made the meaning

of the federal statute involved here 'more definite' in its application to federal obscenity prosecutions. *Bouie* v. *City of Columbia,* 378 U.S., at 353. Judged by both the judicial construction of § 1461 prior to *Miller,* and by the construction of that section which we adopt today in the light of *Miller,* petitioners' claim of vagueness and lack of fair notice as to the proscription of the material which they were distributing must fail."

It is next urged that the statute fails to require *scienter* by defendant and thus violates the First, Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States. The case of *Smith* v. *California,* 361 U.S. 147 (1959), is relied upon by appellant, but we do not consider *Smith* to be controlling in the instant litigation. There, a municipal ordinance of the City of Los Angeles provided that it was unlawful for any person to have in his possession any obscene writing or book in any place of business where books are sold or kept for sale. The Act was construed by the state courts as making Smith criminally liable, even if he had no knowledge of the contents of the book, subsequently determined to be obscene. The United States Supreme Court held the ordinance unconstitutional, stating:

"By dispensing with any requirement of knowledge of the contents of the book on the part of the seller, the ordinance tends to impose a severe limitation on the public's access to constitutionally protected matter. For if the bookseller is criminally liable without knowledge of the contents, and the ordinance fulfills its purpose, he will tend to restrict the books he sells to those he has inspected; and thus the State will have imposed a restriction upon the distribution of constitutionally protected as well as obscene literature."

The Court added:

"Eyewitness testimony of a bookseller's perusal of a book hardly need be a necessary element in proving his awareness of its contents. The circumstances may warrant the inference that he was aware of what a book contained, despite his denial.

"We need not and most definitely do not pass today on what sort of mental element is requisite to a constitutionally permissible prosecution of a bookseller for carrying an obscene book in stock; whether honest mistake as to whether its contents in fact constituted obscenity need be an excuse; whether there might be circumstances under which the State constitutionally might require that a bookseller investigate further, or might put on him the burden of explaining why he did not, and what such circumstances might be."

The fact that § 41-2704 fails to mention *scienter* does not invalidate the statute. Our views are well expressed in the case of *People* v. *Finkelstein,* 9 N.Y. 2d 342, 174 N.E. 470 (1961), where the Court said:

"Although our statute might possibly be interpreted to exclude *scienter,* we feel, *inter alia,* guided by the strong constitutional presumption attending legislative enactments, [citing cases], that the statute was not intended to unreasonably restrict or inhibit our inalienable 'liberty' protected by due process (see Smith v. People of State of California, supra). A reading of the statute as a whole clearly indicates that only those who are in some manner aware of the character of the material they attempt to distribute should be punished. It is not innocent but calculated purveyance of filth which is exorcised, and a mere omission of the word '*scienter*' need not be construed as an attempt to eliminate that common-law element of the crime. ****"

The Court pointed out that no statute should be declared unconstitutional if by any reasonable construction it could be given a meaning in harmony with fundamental law, and then stated:

"A conviction, therefore, cannot be upheld without proof of the element in question which we find required by section 1141. Such a holding is not extraordinary. The United States Supreme Court has pointed out that it has affirmed 'a conviction under the stated limitation of meaning'. Winters v. People of State of New York, 333 U.S. 507, 510, 68 S. Ct. 665, 667, 92 L. Ed. 840. In

the view of that court: 'The interpretation by the Court of Appeals puts these words in the statute *as definitely as if it had been so amended by the legislature.'* "

As in *Finkelstein,* a reading of § 41-2704, including the fact that the penalty is increased for successive offenses, clearly reflects that punishment is reserved for those who wilfully violate the statute. We agree that *scienter* is necessary, but we do not agree that the requirement must be specifically set out in the statute. It is sufficient if the statutory provision is authoritatively interpreted to require the vital element of *scienter.* See *Hamling* v. *U. S., supra.* This brings us to appellant's next argument, *viz.,* the Court erred in instructing the jury on the element of *scienter.* The Court gave two instructions on *scienter,* one from each party. Appellant's Requested Instruction No. 6 (as amended by the Court), and given as Court's Instruction No. 115 reads as follows:

> "The law requires that the Defendant acted knowingly. This means that the state must prove beyond a reasonable doubt, that the Defendant had guilty knowledge. In other words, the proof must show, beyond a reasonable doubt, that the Defendant knew or reasonably should have known the contents of the publication were obscene, as specifically defined, to give the Defendant fair notice of what material is prohibited.
>
> "Unless the proof establishes such knowledge beyond a reasonable doubt, the Defendant must be acquitted."

The State's Requested Instruction No. 6 (amended by the Court) stated:

> "You are further charged that the defendant must knowingly have sold obscene material.
>
> "The prosecution must prove that the defendant was aware *or should have been aware that the publication contain[s] unlawful material.* [Our emphasis]
>
> "You may consider the following circumstances in

---

'There was no objection to this instruction.

regard as to whether or not the defendant was aware of the contents of the publication:

"(a) the nature and character of the language or illustrations on the cover.

"(b) the prices marked on the publication."

The attack centers upon the italicized portion of State's Instruction No. 6, appellant arguing that this portion of the instruction required her to personally check every magazine and book in the store to determine if any material was suspect, or in violation of the law, and that such a requirement inhibits free speech and press.

We do not agree with this argument. The proof does not reflect whether Book Store Limited No. 2 deals solely with the type of literature here involved, i.e., whether it is a "pornography" shop, but it would appear that appellant had ample opportunity to determine that this magazine was obscene at the time of the purchase. Appellant took the magazine, told the officer the charge was $7.50, and placed it in a paper sack. In doing so, appellant certainly could have viewed the front and back covers of the magazine before making the sale; in fact, it would have been most difficult to have made the sale without at least observing the front cover, since it is reasonable to assume that the $7.50 purchase price was affixed over the $5.00 price printed on the magazine. This front cover, aside from large type language, "SEXUAL TRIOS AND QUARTETS" features the photograph of a nude female involved in heterosexual and homosexual oral breast manipulation with two others. We consider it a patently offensive representation of ultimate sexual acts, both "normal" and "perverted". See *Miller* v. *California, supra,* and *Gibbs* v. *State,* 255 Ark. 997, 504 S.W. 2d 719 (1974). The back cover also is informative as to the contents, the following language appearing in large print:

INQUIRY
TAKES YOU INTO THE
GROUP SEX REVOLUTION
ON THE
SCENE VIEWS OF TODAY'S
SEXUALLY FREE
ADULTS ENGAGED
IN
SEXUAL TRIOS
AND QUARTETS

The contents of the magazine itself cannot be considered in any category except "hard core pornography"; the photographs depict group sex, the participants committing various sexual acts. Some portray acts between male and female, some between female and female, and no picture has less than three participants, the persons involved ranging from this number to eight.

It is interesting to note that the magazine was enclosed by a cellophane cover which was sealed. This could have been done to prevent customers from perusing through the pages, or it could have been done in order that a defendant would be in a position to argue that he had no knowledge of the contents. Of course, a salesman could always say that he was not aware of the material within the magazine. In *Hamling* v. *United States, supra,* the United States Supreme Court said:

> "The *Mishkin* holding was reaffirmed in *Ginsberg* v. *New York,* 390 U.S. 629 (1968). There the Court was again faced with the sufficiency of the scienter requirement of another New York statute, which proscribed the 'knowing' distribution of obscene materials to minors. 'Knowingly' was defined in the statute as 'knowledge' of, or *'reason to know'* [our emphasis] of the character and content of the material. Citing *Mishkin,* and the New York Court of Appeals' construction of the other similar statutory language, the Court rejected the challenge to the scienter provision.

> "We think the 'knowingly' language of 18 U.S.C. § 1461, and the instructions given by the District Court in

this case satisfied the constitutional requirements of scienter. It is constitutionally sufficient that the prosecution show that a defendant had knowledge of the contents of the materials he distributes, and that *he knew the character and nature of the materials.*" [Our emphasis].

As already pointed out in the quote from *Smith v. California, supra,* the court held that it was not passing on whether there might be circumstances under which the state "might require that a bookseller investigate further, or might put on him the burden of explaining why he did not and what such circumstances might be." In the case before us, no evidence was offered by any witness that any sort of investigation by the seller was made of the magazine sold, nor why such investigation was not made; nor was there testimony as to any other circumstance that might be considered as possibly justifying the act of appellant in making the sale. We conclude that the instruction was correct.

Affirmed.

GEORGE ROSE SMITH and BYRD, JJ., dissent.

CONLEY BYRD, Justice, dissenting. It looks to me that Ark. Stat. Ann. § 41-2704 (Repl. 1964), is unconstitutionally vague. That which is prohibited is the sale or circulation of *"any obscene, vulgar or indecent papers. . .* in which is illustrated *any indecent or vulgar pictures. . ."* [emphasis mine]. The criterion for determining when a criminal statute is so vague that it cannot be enforced was stated in *Smith v. Goguen,* 415 U.S. 566, 94 S. Ct. 1242, 39 L. Ed. 2d 605 (1974), in this language:

"We agree with the holdings of the District Court and the Court of Appeals on the due process doctrine of vagueness. The settled principles of that doctrine require no extensive restatement here. The doctrine incorporates notions of fair notice or warning. Moreover, it requires legislatures to set reasonably clear guidelines for law enforcement officials and triers of fact in order to prevent 'arbitrary and discriminatory enforcement.' Where a statute's literal scope, unaided by a narrowing

state court interpretation, is capable of reaching expression sheltered by the First Amendment, the doctrine demands a greater degree of specificity than in other contexts."

In *Jenkins* v. *Georgia,* 94 S. Ct. 2750, 41 L. Ed. 2d 642 (1974), the United States Supreme Court held that nudity alone was not enough to make material legally obscene under the *Miller* standards. In discussing the standards set forth in *Miller* v. *California,* 413 U.S. 15, 93 S. Ct. 2607, 37 L. Ed. 2d 419 (1973), the opinion states:

". . . Even though questions of appeal to the 'prurient interest' or of patent offensiveness are 'essentially questions of fact,' it would be a serious misreading of *Miller* to conclude that juries have unbridled discretion in determining what is 'patently offensive.' Not only did we there say that 'the First Amendment values applicable to the States through the Fourteenth Amendment are adequately protected by the ultimate power of appellate courts to conduct an independent review of constitutional claims when necessary,' 413 U.S., at 25, but we made it plain that under that holding 'no one will be subject to prosecution for the sale or exposure of obscene materials unless these materials depict or describe patently offensive 'hard core' sexual conduct. . . .' 413 U.S. at 27.

We also took pains in Miller to 'give a few plain examples of what a state statute could define for regulation under part (b) of the standard announced,' that is, the requirement of patent offensiveness, 413 U.S., at 25. These examples included 'representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated,' and 'representations or descriptions of masturbation, excretory functons, and lewd exhibition of the genitals.' While this did not purport to be an exhaustive catalog of what juries might find patently offensive, it was certainly intended to fix substantive constitutional limitations, deriving from the First Amendment, on the type of material subject to such a determination."

Based upon the foregoing standards we then must look to see whether the statute here involved (". . . any obscene, vulgar or indecent papers...in which is illustrated any indecent or vulgar pictures..."), sets any reasonably clear guidelines for law enforcement officials. The term "obscene" is defined in Webster's International Dictionary 2nd Ed. as follows:

> "Offensive to chasity of mind or to modesty; expressing or presenting to the mind or view something that delicacy, purity, and decency forbid to be exposed; lewd; indecent; as obscene language, dances, images."

The term "vulgar" is defined in the same dictionary as follows:

> "Belonging or relating to the common people as distinguished from the cultivated or educated; pertaining to common life; plebian. 'Like the *vulgar* sort of market-man:' *Shak.* 'Law and *vulgar* life.' *Addison.*"

The term "indecent" is defined in the same dictionary as follows:

> "Unbecoming or unseemly; indecorous; as, indecent haste. . . uncomely; ill-looking. Morally unfit to be seen or heard; offensive to modesty and delicacy; as indecent language."

When the foregoing definitions are applied to the statute here involved it becomes obvious that no language therein gives a law enforcement officer any guide lines that would tell him the film "Carnal Knowledge" is not violative thereof. During my childhood the mothers of my community breast-fed their babies not only at home but in the church house and other public meeting places such as political gatherings. These days breast-feeding of a baby in a public place is considered by many as being "offensive to...modesty," vulgar and indecent. My Mother, an octogenarian, considers a bikini bathing suit as "offensive to...modesty," vulgar and indecent not to say anything about nudity. Yet all of those examples could be classified as being prohibited by the statute here involved.

The majority, however, to get around the vagueness attack on the statute here involved, rely upon the statute involved in *Hamling* v. *United States,* 94 S. Ct. 2887, 41 L. Ed. 2d 590 (1974). The statute there involved, prohibits "Every obscene, lewd, lascivious, indecent, filthy or vile article . . . ." Needless to say the term "lascivious" is defined in Webster's, *supra* as follows:

"1. Wanton; lewd; lustful.
2. Tending to produce voluptuous or lewd emotions."

The term "lewd" is defined by the same authority as follows:

"Lustful, libidinous; lascivious; unchaste; as a *lewd* man . . . ."

When the terms "filthy" and "vile" are added to the terms obscene, lewd, lascivous and indecent it at once becomes obvious to me that which is prohibted in *Hamling, supra,* is something more than mere nude pictures for after all nude pictures are not lascivious, filthy or vile.

Our statute (Ark. Stat. Ann. § 41-2704, supra) does not contain any such limiting language.

It seems abhorrent to me to say that a statute can be applied with reasonably clear guidelines by law enforcement officials when by a literal reading a law enforcing officer can logically apply it equally to a person circulating a paper illustrating the virtues of breast-feeding a baby or sun bathing in a bikini (even though such conduct is constitutionally prohibited by *Jenkins,* supra,) and to a person circulating the vile and filthy sexual debauchery illustrated in the magazine before us. Such decisions on our part place the law abiding citizen so much at the mercy and comprehension of an individual law enforcement official that the same conduct may be unlawful south of the Arkansas River and considered lawful north of the river or in the next county. That kind of vagueness should not exist in our criminal law enforcement.

For the reasons stated I respectfully dissent.