COMMONWEALTH *vs.* PAUL BONO (and a companion case[1]). January 26, 1979. 1. Our examination of the publication whose dissemination resulted in the issuance of these complaints under G. L. c. 272, § 29, persuades us that the defendants failed to carry their burden of proving the publication a "book" within the meaning of G. L. c. 272, §§ 28C-31. *Commonwealth* v. *Ferro,* 372 Mass. 379, 384-385 (1977). The references in some of the reproduced letters from readers to previous publications of the same name and similar character, as well as the numerous invitations to readers to send in letters and photographs, inferably for reproduction in future issues, are evidence of "continuity with other publications of a similar format and content issued at periodic intervals." *Id.* at 384. Such evidence in the circumstances warrants characterizing the publication as a magazine rather than a book. See *Commonwealth* v. *Zone Book, Inc.,* 372 Mass. 366, 371 (1977). Thus, insofar as the motions to dismiss the complaints were based on the absence of any in rem proceeding against the publication, the motions were properly denied. *Commonwealth* v. *Ferro, supra* at 381-382, 384-385. 2. We also think that the judge was right in rejecting the further ground advanced in the defendant Bono's motion to dismiss: that the exemption from prosecution under § 29 of certain employees of motion picture theaters by G. L. c. 272, § 32, deprived Bono, an employee of a book store, of his constitutional right to equal protection of the laws. As pointed out in the Commonwealth's brief, there are obvious differences between a book and a motion picture, in the manner in which the two are customarily offered to the public and in the ability of employees who offer them to determine their content beforehand. In view of those differences, we are not prepared to say that there can be no rational basis for the distinction drawn by the Legislature as to the criminal liability of the two classes of employees. Compare *Commonwealth* v. *Ferro,* 372 Mass. at 383. 3. Nor was there error in the judge's actions concerning the issue of the continued corporate existence of the defendant Zone Book, Inc. (Zone), when the publication was sold in February, 1977. In that connection we assume with Zone that its failure to assert lack of corporate status in its pretrial motion to dismiss did not constitute a waiver of that claim by operation of the third paragraph of G. L. c. 277, § 47A, and that the issuance, a week before the trial in this case, of a decision by the Supreme Judicial Court in another obscenity prosecution against the same defendant (*Commonwealth* v. *Zone Book, Inc.,* 372 Mass. 366 [1977]) did not amount to an adjudication of Zone's corporate status at that time. The

[1] Commonwealth *vs.* Zone Book, Inc.

judge in any event was entitled to infer from the articles of organization and certificate of condition dated March 16, 1976, both of which were introduced in evidence without objection, that Zone still existed as a corporation when the sale occurred on February 11, 1977, there being no evidence to the contrary, under "the familiar rule that a state of things once proved to exist may generally be found to continue." *Galdston* v. *McCarthy*, 302 Mass. 36, 37 (1938), and cases cited. *Matter of Hiss*, 368 Mass. 447, 460 (1975). *Commonwealth* v. *Pauley*, 368 Mass. 286, 290-299 (1975), relied upon by Zone, in no way curtails the drawing of such an inference by the trier of fact in a criminal case. We interpret the judge's statement that "once the fact [of] the corporation's existence was established, it became *almost* in the area of affirmative defense that they show it no longer existed" (emphasis supplied), as nothing more than a reiteration of the "familiar rule" quoted above, framed in terms of the effect of that rule on the burden of producing evidence. If there was error in admitting the consent resolution of Zone's directors in evidence, the error was clearly harmless, as the judge announced that he was attaching no evidentiary value to the resolution. 4. The further finding that Zone operated the book store at the time the publication was sold was also amply warranted, though not necessarily for the same reason. Officer Elia testified unequivocally that the transaction had occurred at "10 Boylston Street, the Zone Book, Inc.," and that testimony was introduced without objection or a timely motion to strike. Zone's belated motion to strike the testimony, submitted after its assignment of errors had been filed and, for all that appears from the docket, never acted upon, is not a part of the record on appeal within the meaning of G. L. c. 278, § 33E, and we do not consider it. *Commonwealth* v. *Laliberty*, 373 Mass. 238, 243-244 (1977). 5. While the publication was stapled shut at the time of its purchase, the large printed legends and vivid photographs on its front and back covers make its obscene content abundantly clear at a glance, and Bono could scarcely have avoided noticing at least one of those covers when it was presented to him for purchase; it is especially difficult to imagine how he could otherwise have determined the price to charge, which is printed in relatively small type on the front cover. Thus, there was more than enough evidence from which Bono's "general awareness of the character" of the publication (G. L. c. 272, § 31, as appearing in St. 1974, c. 430, § 12) could have been inferred. See *Commonwealth* v. *Trainor*, 374 Mass. 796, 800-801 (1978). Contrast *Commonwealth* v. *Thureson*, 371 Mass. 387, 389-390 (1976). 6. The difficulty with Bono's final contention, based as it is on one of the dissenting opinions in *Commonwealth* v. *Trainor, supra* at 807-811, is that this court is bound by the majority opinion and not by the dissent.

*Judgments affirmed.*

*Regina L. Quinlan* for the defendants.
*James Paisley*, Assistant District Attorney, for the Commonwealth.