**STATE of Missouri,
Plaintiff–Respondent,**

v.

**Valerie COOLEY, Defendant–Appellant.**

No. 14793.

Missouri Court of Appeals,
Southern District,
Division Two.

March 1, 1989.

Errol Copilevitz, Richard E. Standridge, Copilevitz, Bryant, Gray & Jennings, Kansas City, for defendant-appellant.

William J. Fleischaker, David C. Dally, Joplin, for plaintiff-respondent.

MAUS, Judge.

The defendant was convicted of promoting pornography in the second degree. § 573.030, RSMo 1978 (now repealed). The statutes under which she was convicted defined the third element of pornography as "applying contemporary community standards: ... It lacks serious literary, artistic, political or scientific value." § 573.010(1)(c), RSMo 1978, (now repealed). She contends her conviction was invalid because *Pope v. Illinois*, 481 U.S. 497, 107 S.Ct. 1918, 95 L.Ed.2d 439 (1987) in relevant part has defined pornography as "whether a reasonable person would find such value in the material, taken as a whole." *Id.*, 481 U.S. at 501, 107 S.Ct. at 1921, 95 L.Ed.2d at 445 (footnote omitted). Her contention is denied.

The following is an outline of the history and facts of the case. An information charged that the defendant violated § 573.030, RSMo 1978, (now repealed) by promoting pornographic material, for pecuniary gain, such material being the magazines "Eat Me, Number 1" and "Hot Flesh, Volume I, Number I." Before trial she waived sentencing by jury. § 557.036.

The only witness testified to the following facts. On September 23, 1985, he and two associates entered an "adult" bookstore in Joplin. They perused approximately 200 magazines displayed in the store. They selected the two in question. They took them to the defendant sales clerk and told her they wanted to purchase the magazines. She told them the price was $17.98. She accepted the purchase price from the witness and rang it up on the cash register. The jury found the defendant guilty. The court fixed her punishment at a fine of $300. The defendant appealed to this court.

While the case was pending in this court, the United States Supreme Court decided *Pope v. Illinois, supra.* This court transferred the case to the Supreme Court of Missouri as the constitutionality of § 573.010(1), RSMo 1978, (now repealed) was at issue. That court has retransferred the case to this court. *State v. Cooley*, 756 S.W.2d 531 (Mo. banc 1988).

■ The defendant's principal point is that her conviction must be reversed because § 573.030, RSMo 1978, (now repealed), incorporating § 573.010(1), RSMo 1978, (now repealed) was unconstitutional because it "criminalized 'pornography' by relying upon a standard which required

that serious literary, artistic, political or scientific value be determined by contemporary community standards...." A corollary point is that the trial court committed plain error because the verdict directing instruction incorporated a definition of pornography that "required that literary, artistic, political or scientific value be determined by the application of contemporary community standards rather than the standard of a reasonable person." These contentions do not require an extended discussion. The appeal has been "retransferred to the Court of Appeals, Southern District, for consideration under *Pope v. Illinois*, 481 U.S. 497, 107 S.Ct. 1918, 95 L.Ed.2d 439 (1987), and *State v. McKinney*, 756 S.W.2d 527 (Mo. banc 1988)." *State v. Cooley*, supra, at 532.

The provisions of former § 573.010(1), RSMo 1978, (now repealed) defining pornography and its replacement § 573.010(8), RSMo Supp.1987, defining obscenity are set forth in *State v. McKinney, supra.* The same is true of § 573.030, RSMo 1978, (now repealed) and its replacement § 573.030 R.S.Mo Supp.1987. Those sections and their history need not be restated here. The provisions and history of those sections are for practical purposes the same as the provisions and history of the Illinois legislation considered in *Pope.*

To consider the case under *Pope*, this court has been directed:

> Under these circumstances, we see no reason to require a retrial if it can be said beyond a reasonable doubt that the jury's verdict in this case was not affected by the erroneous instruction.
>
> ....
>
> While it was error to instruct the juries to use a state community standard in considering the value question, *if a reviewing court concludes that no rational juror, if properly instructed, could find value in the magazines, the convictions should stand.*

*Pope*, 481 U.S. at 502–03, 107 S.Ct. at 1922, 95 L.Ed.2d at 947 (emphasis added) (footnotes omitted).

To consider this case under *State v. McKinney, supra*, this court is directed as follows. "In these circumstances, *there is no reason to order retrials if it can be said beyond a reasonable doubt that the convictions in these cases were not affected by the erroneous wording of the statute.*" *State v. McKinney, supra*, at 530 (emphasis added).

The contents of "Eat Me" and "Hot Flesh" need not be described in detail. Their principal content is pictures of nude or partially nude men and women engaging in various actual or simulated acts of vaginal intercourse, cunnilingus and fellatio. They constitute unadulterated and unmitigated smut. This court determines that no rational person could find either magazine, taken as a whole, to have any literary, artistic, political or scientific value. The defendant's principal point and its corollary have no merit and are denied.

■ The defendant's third point is that the evidence is insufficient to support her conviction because the state did not prove beyond a reasonable doubt she knew the content and character of the magazines. She argues that "[u]nder the evidence actually presented by the State in this case it is entirely possible that the Defendant never saw the magazines at all. Certainly there was no testimony that she did, in fact, look at the magazines."

In presenting this point, the defendant overlooks the basic principles by which the sufficiency of the evidence is to be measured.

> On that issue we consider the evidence and all inferences reasonably to be drawn therefrom in the light most favorable to the verdict, and disregard all contrary evidence and inferences.... The test is whether the evidence, so viewed, was sufficient to make a submissible case from which rational jurors could have found beyond a reasonable doubt that defendant was guilty.

*State v. Marvel*, 756 S.W.2d 207, 209 (Mo. App.1988) (citations omitted).

> It is constitutionally sufficient that the prosecution show that a defendant had knowledge of the contents of the materials he distributed, and that he knew the

character and nature of the materials. To require proof of a defendant's knowledge of the legal status of the materials would permit the defendant to avoid prosecution by simply claiming that he had not brushed up on the law.

*Hamling v. United States,* 418 U.S. 87, 123, 94 S.Ct. 2887, 2910–2911, 41 L.Ed.2d 590, 624 (1974). This knowledge may be established by circumstantial evidence. *State v. Triplett,* 722 S.W.2d 633 (Mo.App. 1986).

In this case the circumstances of the defendant's sale of the magazines include the following: On the front and back covers of each magazine is a lurid picture of what has been categorized as "hard core pornography." *Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). The price of one magazine was $9.95 and the other $7.00. The prices were shown on the front cover of the magazines. The defendant was employed in an "adult" bookstore, surrounded by sexually oriented books, magazines, videos and sex toys and artificial sex organs. The circumstances were much as in *Commonwealth v. Bono,* 7 Mass.App. 849, 384 N.E.2d 1260 (1979). In that case the court appropriately observed the following.

> While the publication was stapled shut at the time of its purchase, the large printed legends and vivid photographs on its front and back covers make its obscene content abundantly clear at a glance, and Bono could scarcely have avoided noticing at least one of those covers when it was presented to him for purchase; it is especially difficult to imagine how he could otherwise have determined the price to charge, which is printed in relatively small type on the front cover.

*Id.* 384 N.E.2d at 1262. Also see *United States v. Grassi,* 602 F.2d 1192 (5th Cir. 1979). There was sufficient evidence from which any rational juror could find beyond a reasonable doubt the defendant knew the character and content of the magazines. *Burns v. State,* 256 Ark. 1008, 512 S.W.2d 928 (1974); *People v. Moore,* 53 Ill.App.3d 75, 11 Ill.Dec. 35, 368 N.E.2d 586 (1977); *State v. Triplett, supra.*

■ The defendant's fourth point is as follows.

The trial court erred in overruling defendant's motion for new trial because defendant's First and Fourteenth Amendment rights were violated when defendant was brought to trial under the procedure contained in § 545.250 R.S.Mo as applied to Chapter 573 R.S.Mo in that allowing a private citizen to initiate criminal prosecution involving written material that is presumptively protected by the First Amendment is violative of the First and Fourteenth Amendments and has a pronounced impermissible 'chilling affect' upon the free exercise of First Amendment rights.

Section 545.250 provides that any person who has knowledge of the commission of a crime may file a complaint and that "it shall be the duty of the prosecuting attorney to file an information" thereon. The defendant's point refers to the fact that the individual who purchased the magazines in question was a member of the Citizens For Decency Through Law (CDL) and he filed a complaint based upon that purchase.

The essence of the defendant's argument to support that point is as follows.

> Similarly the CDL was able to initiate prosecution in this case without reason or findings. Their sole object was to enforce their views upon the rest of their community. This private goal is not a proper end for the criminal justice system. Placing the means of initiating criminal prosecution in the hands of a small determined group of citizens enshrines their private aims as those of that system. There is no room in such a situation for the reasoned and dispassionate review necessary for the protection of fundamental rights. The small group becomes the arbiter of what actions are the 'proper' exercise of personal liberty.

Each statement in this argument is flawed. It is obvious that the complaining witness did not file the complaint without reason. "In an unbroken series of cases extending over a long stretch of this Court's history, it has been accepted as a postulate that the 'primary requirements of

decency may be enforced against obscene publications.' [*Near v. Minnesota* 283 U.S. 697, 716, 51 S.Ct. 625, 631, 75 L.Ed. 1357 (1931)]." *Kingsley Books, Inc. v. Brown*, 354 U.S. 436, 440, 77 S.Ct. 1325, 1327, 1 L.Ed.2d 1469, 1473 (1957). The object of the witness was to complain that the defendant was, contrary to law, imposing her views in the form of pornographic magazines upon the rest of the community.

Rights and interests 'other than those of the advocates are involved.' *Breard v. Alexandria*, 341 U.S. 622, 642, 95 L.Ed. 1233, 71 S.Ct. 920, [932], 35 A.L.R.2d 335 (1951). These include the interest of the public in the quality of life and the total community environment, the tone of commerce in the great city centers, and, possibly, the public safety itself. The Hill–Link Minority Report of the Commission on Obscenity and Pornography indicates that there is at least an arguable correlation between obscene material and crime. *Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 58, 93 S.Ct. 2628, 2635, 37 L.Ed.2d 446, 457 (1973) (footnote omitted). This case demonstrates there has been a reasoned review of what the defendant says are her fundamental rights. Contrary to the defendant's assumption, the prosecuting attorney exercised his discretion in filing an information. *State on inf. McKittrick v. Wymore*, 345 Mo. 169, 132 S.W.2d 979 (banc 1939); *State ex rel. Schultz v. Harper*, 573 S.W.2d 427 (Mo.App.1978). She was afforded the due process of a jury trial. A jury found beyond a reasonable doubt she promoted pornography. This determination was affirmed by the trial court. It is affirmed by this court.

The cases cited by the defendant under this point are not factually applicable. They do not aid her. In fact, *Dombrowski v. Pfister*, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965), recognizes that except in extraordinary circumstances, which are not present in cases such as this one, the Supreme Court has found no reason "to warrant cutting short the normal adjudication of constitutional defenses in the course of a criminal prosecution." *Id.*, 380 U.S. at 485, 85 S.Ct. at 1120, 14 L.Ed.2d at 27. "As for other films, if they offend contemporary local community standards, possibly local indignation can arouse local prosecutorial action." *United States v. One Reel of 35MM Color Motion Picture Film, Etc.*, 491 F.2d 956, 959 (2nd Cir.1974). The defendant's fourth point has no merit and is denied.

■ The defendant's next point is:

The trial court erred when it ruled that defendant could not introduce evidence consisting of comparable magazines and video tapes which were widely available for purchase in Jasper County because such evidence is probative of public acceptance of sexually explicit material and is properly admissible in that Section 573.050.1(3) R.S.Mo.1978 provides that evidence of public acceptance in this state and in the local community shall be received in prosecutions under Chapter 573.

This point misconceives the record. The point has its origin in the following offer of proof.

The defendant would have offered Keith Spencer, who is an investigator here locally, who would have testified that he was hired by me and at my request went to five different establishments in Jasper County and in each establishment he purchased a magazine or a video with pictures or a content of a sexual-type nature, that he found each on public display, that these were offered at convenience-type stores, other unspecialized outlets.

The offer was refused.

The scope of evidence admissible to establish the elements of pornography has been the subject of numerous decisions, often without distinction concerning which element. Annot., Obscenity, 5 A.L.R.3d 1158 (1966). A juror is presumably familiar with community standards. *United States v. One Reel of 35 MM Color Motion Picture Film, Etc, supra*. "[T]he ability of the juror to ascertain the sense of the 'average person, applying contemporary community standards' without the benefit of expert evidence" has been recognized. *Hamling v. United States, supra*, 418 U.S.

at 105, 94 S.Ct. at 2901, 41 L.Ed.2d at 613. Also see Concurring Opinion of Judge Meskill in *United States v. Various Articles of Obscene Merchandise,* 709 F.2d 132 (2nd Cir.1983). "Expert testimony is not necessary to enable the jury to judge the obscenity of material which, as here, has been placed into evidence." *Hamling v. United States, supra,* 418 U.S. at 100, 94 S.Ct. at 2899, 41 L.Ed.2d at 610. While announced in respect to standards as enunciated in *Miller,* these principles are applicable to the reasonable person standard clarified in *Pope.* "A juror is entitled to draw on his own knowledge of the views of the average person in the community or vicinage from which he comes for making the required determination, just as he is entitled to draw on his knowledge of the propensities of a 'reasonable' person in other areas of the law." *Hamling v. United States, supra,* 418 U.S. at 104–105, 94 S.Ct. at 2901, 41 L.Ed.2d at 613.

It has long been the general common law rule that neither a layman nor an expert could testify concerning conformance to the standard of a reasonable man in respect to matters of common experience. *State v. Smith,* 422 S.W.2d 50 (Mo. banc 1967), cert. denied, 393 U.S. 895, 89 S.Ct. 150, 21 L.Ed.2d 176 (1968); *State v. Tidyman,* 30 Or.App. 537, 568 P.2d 666 (1977). In *State v. Becker,* 364 Mo. 1079, 272 S.W. 2d 283 (1954) (overruled on another point in *State v. Vollmar,* 389 S.W.2d 20 (Mo. 1965)), the court held that expert testimony that the material in question conformed to general community standards and was not obscene was inadmissible. In *State v. Vollmar, supra,* the court adhered to that decision with the following observation: "Judges and jurors certainly have knowledge concerning the general community standards relating to moral conduct and obscenity. In the field of obscenity the average citizen is as capable of judging a publication as an alleged expert." *Id.* at 30. In speaking of the subject of pornography or obscenity, the Supreme Court of the United States said the following.

This is not a subject that lends itself to the traditional use of expert testimony. Such testimony is usually admitted for the purpose of explaining to lay jurors what they otherwise could not understand. Cf. 2 J. Wigmore, Evidence §§ 556, 559 (3d ed.) (1940). No such assistance is needed by jurors in obscenity cases; indeed the 'expert witness' practices employed in these cases have often made a mockery out of the otherwise sound concept of expert testimony.

*Paris Adult Theatre I v. Slaton, supra,* 413 U.S. at 56, 93 S.Ct. at 2634, 37 L.Ed.2d at 456 n. 6. However, *Kaplan v. California,* 413 U.S. 115, 93 S.Ct. 2680, 37 L.Ed.2d 492 (1973), contains the following statement.

The defense should be free to introduce appropriate expert testimony, see *Smith v. California,* 361 U.S. 147, 164–165, 80 S.Ct. 215, 224–225, 4 L.Ed.2d 205 (1959) (Frankfurter, J., concurring), but in 'the cases in which this Court has decided obscenity questions since *Roth* [v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957) ], it has regarded the materials as sufficient in themselves for the determination of the question.' *Ginzburg v. United States,* 383 U.S. 463, 465, 86 S.Ct. 942, 944, 16 L.Ed.2d 31 (1966).

*Id.,* 413 U.S. at 121, 93 S.Ct. at 2685, 37 L.Ed.2d at 498–499. Also see *Hamling v. United States, supra.*

The Criminal Code contains the following provisions:

1. In any prosecution under this chapter evidence shall be admissible to show:

(1) What the predominant appeal of the material or performance would be for ordinary adults or minors;

(2) The literary, artistic, political or scientific value of the material or performance;

(3) The degree of public acceptance in this state and in the local community;

(4) The appeal to prurient interest in advertising or other promotion of the material or performance;

(5) The purpose of the author, creator, promoter, furnisher or publisher of the material or performance.

2. Testimony of the author, creator, promoter, furnisher, publisher, or expert testimony, relating to factors entering into the determination of the issues of obscenity or child pornography, shall be admissible.

§ 573.050.1 and .2 as amended effective July 15, 1987. These provisions were drawn from the Model Penal Code. This section has not been construed in this state. However, it is clear that this section does not cause all evidence or testimony offered in the guise of pertaining to one of the above factors to be admissible. Such testimony, whether from a lay or expert witness, must conform to the usual standards to establish admissibility of evidence. *Hamling v. United States, supra; United States v. Pryba,* 678 F.Supp. 1225 (E.D.Va. 1988). The same is true of evidence in the form of exhibits. Those standards include the competency of the witness, the proper foundation for the opinion of an expert, and the relevance or probative value of tendered evidence.

The defendant's offer of proof is ambiguous. If the scope of the offer was to establish that comparable materials were sold at five locations in Joplin, it is apparent the offer was correctly refused. The proof offered would not establish the magazines and videos were in fact comparable with "Eat Me" and "Hot Flesh". *United States v. Womack,* 509 F.2d 368 (D.C.Cir. 1972); *United States v. Pryba, supra.* Moreover, even if the proffered magazines were identical, their availability at five locations would establish nothing. "But the availability of similar materials on the newsstands of the community does not automatically make them admissible as tending to prove the nonobscenity of the materials which the defendant is charged with circulating." *Hamling v. United States, supra,* 418 U.S. at 125, 94 S.Ct. at 2912, 41 L.Ed.2d at 625. "Evidence of mere availability of similar materials is not by itself sufficiently probative of community standards to be admissible in the absence of proof that the material enjoys a reasonable degree of community acceptance." *United States v. Manarite,* 448 F.2d 583, 593 (2nd Cir.1971), cert. denied, 404 U.S. 947, 92 S.Ct. 298, 30 L.Ed.2d 264 (1971). "[T]he mere fact that materials similar to the brochure at issue here 'are for sale and purchased at book stores around the country does not make them witnesses of virtue.' " *Hamling v. United States, supra,* 418 U.S. at 126, 94 S.Ct. at 2912, 41 L.Ed.2d at 625. The issue of general acceptance is discussed in *United States v. Womack, supra.*

Even if the offer was to prove community acceptance by an expert opinion based upon a survey, the offer was correctly refused. The fallibility and inadmissibility of an expert opinion bearing a prominent facade of authenticity was demonstrated in an incisive and scholarly opinion in *United States v. Pryba, supra.* In that case the defendant offered the testimony of an associate professor holding a Ph.D. in psychology based upon his ethnographical survey of the community. Upon the basis of that survey it was his opinion certain sexually explicit materials were readily acceptable by the average adult in the community. The court noted that his survey questions were primarily directed to operators and customers of adult bookstores and sought to establish whether or not the person being interviewed approved of the materials. The court observed: "Stripped of its scientific disguise, Dr. Scott's so-called 'ethnography' is shown to be nothing more than a series of interviews with dealers of sexually explicit materials and their customers. This is neither science, nor work requiring expertise." *United States v. Pryba, supra,* at 1233. It concluded: "Dr. Scott's ethnography, in essence, constitutes nothing more than a one-man, eight-day, unscientific poll of purveyors and purchasers of smut. To permit this so-called 'study' to masquerade as expert testimony on Northern Virginia's contemporary community standards of obscenity is ludicrous." *Id.* at 1234 (footnote omitted). That conclusion is applicable to the defendant's offer of proof. *Cf. People v. Nelson,* 88 Ill.App.3d 196, 43 Ill.Dec. 476, 410 N.E.2d 476 (1980). The point is denied.

The defendant's last point is that her convictions must be reversed "in that the magazines purchased by the state's com-

plaining witness were not obscene as a matter of law." "It is readily apparent that these magazines contain material portraying most of the 'plain examples' of obscenity which *Miller* [*v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973)] held sufficient to support a conviction." *United States v. Womack, supra,* at 384. Also see *State v. Cox,* 619 S.W.2d 794 (Mo.App.1981), cert. denied, 455 U.S. 976, 102 S.Ct. 1485, 71 L.Ed.2d 688 (1982). The defendant's last point is denied and the judgment is affirmed.

HOGAN, J., concurs.

PREWITT, J., dissents and files dissenting opinion.

PREWITT, Judge, dissenting.

I respectfully dissent.

In my view the majority opinion is correct that no rational person would find that either magazine has any literary, artistic, political or scientific value. However, in denying a jury determination on this issue we are substituting our judgment for that of a jury.

Defendant was entitled to a jury trial with proper directions from the court and she did not get that. The change in the applicable standard also could change the evidence, counsel's argument to the jury, or other trial strategy. It is impossible to say that a different result could not have occurred. As a practical matter we know that juries occasionally make decisions that we may not regard as "rational".

As offensive as these magazines were, the defendant is entitled to have a jury make the decision if she is guilty of the offense charged. See *State v. Triplett,* 722 S.W.2d 633, 640–643 (Mo.App.1986) (Prewitt, J., dissenting).