Charles Marks, J.
This is an application by the Corporation Counsel of the City of New York and the District Attorney of each of the five counties of the City of New York for an order staying and restraining the defendants during the pendency of this action from acquiring or selling and/or distributing, and/or disposing in any manner of any of the issues and copies of the book referred to in the complaint bearing title “ John Cleland’s Memoirs of A Woman of Pleasure” under the masthead of Gr. P. Putnam’s Sons, New York.
The action has been instituted pursuant to section 22-a of the Code of Criminal Proceduie to enjoin the publisher, the distributors, and the retail bookstore owners as defendants from selling, distributing, etc., the said book above mentioned.
The question now before this court is whether the book published by the defendant, GL P. Putnam’s Sons “ John Cleland’s Memoirs of A Woman of Pleasure ” meets the test of obscenity as enunciated by our Court of Appeals and the Supreme Court *26 of the United States. This court has read the book and has carefully and painstakingly read the papers in support of and in opposition to this application. I have come to the conclusion that “ John Clelland’s Memoirs of A Woman of Pleasure ” is obscene within the meaning of section 22-a of the Code of Criminal Procedure. In view of this finding of obscenity, the contention of defendant that the publication is protected by the First Amendment of the United States Constitution and section 8 of article I of the New York Constitution is without merit. Obscenity is not within the area of constitutionally protected speech or press (see Roth v. United States, 354 U. S. 476). The test of obscenity was recently applied by the Court of Appeals in People v. Fritch (13 N Y 2d 119), which held the “ Tropic of Cancer ” to be obscene within the meaning of section 1141 of the Penal Law, a statute which is the counterpart of section 22-a of the Code of Criminal Procedure. Judge Scileppi in writing the prevailing opinion in the Fritch case stated: ‘‘ But, while the exact boundaries of obscenity cannot be sharply drawn, the Supreme Court, in Roth v. United States (supra) and Manuel Enterprises v. Day (370 U. S. 478), set forth guidelines and prescribed the essential elements which must conjoin before it can be found that a publication is obscene by constitutional standards. The first of these elements is the so-called ‘ prurient interest ’ test set forth in Both, that is, 1 whether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to the prurient interest ’ (Roth v. United States, supra, p. 489). The second, contained in Manual Enterprises, requires that, in addition to the 1 prurient interest ’ test, it is necessary to establish that the challenged material is also ‘ patently offensive ’ to current community standards of decency (Manual Enterprises v. Day, supra, p. 482).”
Applying this test to the book under consideration, I find that throughout its 298 pages, there is depicted in glowing terms a series of acts dealing with sex in a manner designed to appeal to the prurient interest. In my many years as a Trial Judge in both civil and criminal cases, I have come in contact with every segment of the community and the question as to whether this book appeals to the prurient interest of the average person in the contemporary community can best be determined by a realistic appraisal of its contents by the court. The book describes in detail instances of lesbianism, female masturbation, the deflowering of a virgin, the seduction of a male virgin, the flagellation of male by female and female by male, and other aberrant acts as well as more than 20 acts of sexual intercourse *27 between male and female, some of which are committed in the open presence of numerous other persons and some of which are instances of voyeurism. In the recital of the loss of virginity by a 15-year-old girl, the author goes to great pains to express the “ excess of pleasure through excess of pain ” experience, and further on in the book, the four girl companions of Fanny Hill who are resident in the same bawdy house are asked to narrate the manner and circumstances of their loss of virginity which they proceed to do in lurid detail, the obvious intent being to glorify the deflowering of young girls. The author in the conclusion states at page 298 of the book, “ You know Mr. C e * * 0 * * you know his estate, his worth, and good sense: can you, will you pronounce it ill meant, at least of him, when anxious for his son’s morals, with a view to form him to virtue, and inspire him with a fix’d, a rational contempt for vice, he condescended to be his master of the ceremonies, and led him by the hand thro’ the most noted bawdyhouses in town, where he took care he should be familiarized with all those scenes of debauchery, so fit to nauseate a good taste? The experiment, you will cry, is dangerous. True, on a fool: but are fools worth so much attention? ”
Although these are just random quotes and statements taken from the book, it is not intended in any way to convey the thought that this court has judged this book by taking isolated excerpts which might affect particularly susceptible persons. The court has considered the book as a whole in its impact upon the average person in the community and I find that the book is patently offensive and utterly without any social value. In writing one of the prevailing opinions in the Richmond County News case (9 N Y 2d 578, 587), Judge Fuld said: “ It smacks, at times, of fantasy and unreality, of sexual perversion and sickness and represents, according to one thoughtful scholar, ‘ a debauchery of the sexual faculty’.” The language quoted very aptly applies to the instant case. Chief Judge Desmond in his concurring opinion in Richmond County News (supra), quotes with approval at page 588 that “ ‘ For a book to be prohibited it is necessary that from its whole tenor the author’s intention is evident of teaching the reader about sins of impurity and arousing him to libidinousness.’ ”
In the People v. Fritch case (supra), Judge Scileppi prescribed the essential elements which must be found in a publication to hold it to be obscene by constitutional standards. I find factually that all these prescribed elements are present in the book under consideration.
*28 The defendant has submitted affidavits, letters and comments of literary figures who have commented favorably on the book. Neither the quality of the writing nor the so-called literary worth of the book prevents the book from being adjudged obscene as it meets the tests as enunciated in Roth, Richmond County News and Fritch. The opinions of authors and critics no matter how distinguished they may be cannot be substituted for those of the average person in a contemporary community. The statement that there is “ outward polish in Cleland’s description of sexual scenes ” by one of the distinguished writers and that its style is “ elegant” as described by a well-known poet, editor and critic and that “it is brilliantly written ’ ’ as expressed by another highly regarded critic and author and similar ‘ ‘ commendations ” by literary figures impels the quote from the opinion of Judge Scileppi in People v. Fritch, “ This court will not adopt a rule of law which states that obscenity is suppressible but that well-written obscenity is not.”
This court cannot agree with the statements of some of the distinguished writers and critics in viewing the book as one of historical value ‘ ‘ in that it allegedly describes an age and a manner of living ” or that it is “ typical in its expression of the whole feeling of the period” or “ that it tells us a good deal about 18th Century England.” The morals of the mass of the English people of the mid-18th Century cannot be judged by the narrative of sex and immorality of a minute few any more than we should today indict the people of England for immorality by reason of the lurid recital of sex acts allegedly engaged in by a mere handful of its people.
Accordingly, based upon the contents of the book and the findings of this court, the application of the plaintiffs staying and restraining each of the defendants from publishing, selling, acquiring for the purposes of selling and from distributing or otherwise disposing of any copies of “ John Cleland’s Memoirs of A Woman of Pleasure ” published by Gr. P. Putnam’s Sons of New York is granted.