Benjamin Gassman, J.
The defendants are charged with a violation of section 484-h of the Penal Law, in that the defendants “ on September 4,1963, in the County of New York, unlawfully and wilfully and knowingly sell, lend, give away and show, to a certain minor called Kathleen Keegan, who was then under the age of eighteen years, a certain book and pocket book entitled ‘ The Memoirs of a Woman of Pleasure ’, the contents of which exploited, was devoted to, and was principally made up of descriptions of illicit sex and sexual immorality which is obscene, lewd, lascivious, filthy, indecent and disgusting ’ ’.
The corporate defendant is the owner of a bookstore in the County of New York; the defendant Irwin Weisfeld is the president of that corporation, and the defendant John Downs is an employee of the corporation who sold the book in question to the minor.
Section 484-h of the Penal Law is not a new section. Prior to its being renumbered by chapter 548 of the Laws of 1963, it was known as section 542 of the Penal Law, enacted in 1955. It then read and now reads as follows:
‘ ‘ A person who willfully or knowingly sells, lends, gives away, shows or advertises for sale or distributes commercially to any person under the age of eighteen (18) years or has in his possession with intent to give, lend, show, sell, distribute commercially *797 or otherwise offer for sale or commercial distribution tó any individual under the age of eighteen (18) years any * * * book, ‘ pocket book ’, pamphlet or magazine the cover or content of which exploits, is devoted to, or is principally made up of descriptions of illicit sex or sexual immorality or which is obscene, lewd, lascivious, filthy, indecent or disgusting, or which consists of pictures of nude or partially de-nuded figures, posed or presented in a manner to provoke or arouse lust or passion or to exploit sex, lust or perversion for commercial gain or any article or instrument of indecent or immoral use shall be guilty of a misdemeanor.
“For the purposes of this section ‘ knowingly ’ shall mean having knowledge of the character and content of the publication or failure to exercise reasonable inspection which would disclose the content and character of the same ”.
The complainant testified that she was 16 years of age, and it was stipulated that if her mother, who was in court, were called as a witness, she would testify that the complainant was born on December 6,1946. The complainant stated that on September 4, 1963, she entered the bookstore in question; that there was displayed in the window of that store a large sign, reading as follows:
“why kid abound?
The pile of books below entitled “Memoirs of a Woman of Pleasure” is in reality the long banned (over 100 years)
FANNY HILL
which is now, in the new era of Publishing and Reading Freedom, at last available to this generation, as it was not to any other generation of Americans.
We feel that with the publication of this book almost all of the barriers are now down and it is happening in our time”.
The complainant selected one copy of “ Fanny T-Till ” from a quantity in the store, walked to the cashier’s desk where the defendant Downs was standing and paid to him $6.24 for the book, which he placed in an envelope and gave to her.
The book is in evidence and the defendants stipulated that each of them had knowledge of the contents of the book.
The defendants rested at the end of the People’s case and moved to dismiss the information on the grounds that (1) section 484-h of the Penal Law is unconstitutional, in that it violates the First and Fourteenth Amendments of the Federal Constitution, because it inhibits freedom of expression; and (2) that it is vague and indefinite.
The constitutional question thus raised here is one of first impression in this State.
*798 Wé are aware of the fact that the book before us has been the subject of two State Supreme Court decisions, to wit: Larkin v. Putnam’s Sons (40 Misc 2d 25) wherein Justice Masks, in granting a temporary injunction, held the book obscene; and Larkin v. Putnam’s Sons (40 Misc 2d 28) wherein Justice Klein, in denying a permanent injunction after trial, held that the book was not obscene. However, we are not bound by the latter decision, for the reason that the action before the Supreme Court was instituted pursuant to section 22-a of the Code of Criminal Procedure, which authorizes the Supreme Court to enjoin the sale and distribution of obscene prints as defined in section 1141 of the Penal Law, whereas the case before us involves section 484-h of the Penal Law, which is not coextensive with section 1141. If it were to be held that section 484-h is coextensive with section 1141, then it is entirely superfluous. If all that section 484-h intended to accomplish was to prohibit the sale of the articles enumerated in section 1141, there was no need for enacting it, for that was already within the condemnation of section 1141 when section 484-h and its predecessor, section 542 was enacted. Section 484-h prohibits the sale to minors of books which exploit, are devoted to, or deal principally in descriptions of illicit sex or sexual immorality. There is no such prohibition contained in section 1141 (People v. Finkelstein, 156 N. Y. S. 2d 104).
We hold that it is for us to determine whether the book in question falls under the condemnation of section 484-h of the Penal Law. It was due to our judicial duty rather than to idle curiosity that we read this book. It consists of 298 pages, almost entirely devoted to a detailed description of and recital of illicit intercourse, lesbianism, female masturbation, male homosexuality, sex flagellation and sex orgies in and out of a house of prostitution. The conclusion reached after reading the book is that almost every page of it provokes lustful and lecherous thoughts, stimulating the baser instincts of mankind. It is definitely a “book devoted to and principally made up of descriptions of illicit sex and sexual immorality and is lascivious, filthy and disgusting ”.
While it is true that the book is well written, such fact does not condone its indecency. Filth, even if wrapped in the finest packaging, is still filth. “ Charm of language, subtilty of thought, faultless style, even distinction of authorship, may all have their lure for the literary critic; yet these qualities may all be present and the book be unfit for dissemination to the reading public. Frequently these attractive literary qualities are the very vehicles by which the destination of illegality is reached ” (People v. Seltzer, 122 Misc. 329, 334). As Judge Scileppi stated *799 in People v. Fritch (13 N Y 2d 119, 126): “ This court will not adopt a rule of law which states that obscenity is suppresible but that well-written obscenity is not ”.
Under section 484-h we do not have to find specifically that the book is obscene. If, in fact, the book “ exploits, is devoted to, or is principally made up of descriptions of illicit sex or sexual immorality ’ ’, it is a crime for a person to knowingly sell it to a minor under 18.
We therefore find that the book in question comes completely under the condemnation of section 484-h and that it was sold to a minor under 3 8 years of age.
We come to a consideration of the defendants’ argument that section 484-h is unconstitutional because in limiting the distribution and sale of “ Fanny Hill ” (and books of similar ilk) to persons over 18 years of age, it exercises censorship to the reading public. Expressed more simply, the defendants urge that the Legislature may not say that certain books may not be read by or sold to persons under 18 years of age.
The State, in the exercise of its police power, may enact legislation for the protection of minors and adolescents, as for instance, the prohibition against selling alcoholic beverages to minors under 18; the prohibition against selling tobacco in any form to a minor under 18, or the prohibition against distribution of free medical samples in such a manner that children may become possessed of them, or the prohibition against the employment of children under certain ages. There are other provisions of law, enacted to protect the health and welfare of minors, all of which have been sustained as the proper exercise of the State police power.
The court cannot close its eyes to the grave problem of juvenile delinquency and to some of the causes that brought it about. It is true that fitness for juvenile reading is not a test of the type of literature an adult may read. On the other hand, it is also true that fitness for adult reading is not a test of the type of literature a minor may read. The State, without violating the Federal Constitution, may provide that certain literature which may not, perhaps, affect the adult and more mature minds should not be sold to adolescents or minors of immature minds.
The case before us is different than the case of Butler v. Michigan (352 U. S. 380) in which the defendant was convicted of violating section 343 of the Michigan Penal Code, which provided that “ Any person who shall import, print, publish, sell, possess with intent to sell * * * distribute or offer for sale, any book * * * containing obscene, immoral, lewd or lascivious language, or obscene, immoral, lewd or lascivious prints *800 * * * tending to incite minors to violent or depraved or immoral acts, manifestly tending to the corruption of the morals of youth * * * shall be guilty of a misdemeanor ” (emphasis supplied by us). The Trial Judge found that the defendant sold to a police officer a “ book containing obscene, immoral, lewd and lascivious language, or descriptions, tending to incite minors to violent or depraved or immoral acts, manifestly tending to the corruption of the morals of youth ’
In reversing the conviction, the United States Supreme Court said (pp. 382-383):
“ It is clear on the record that appellant was convicted because Michigan, by § 343, made it an offense for him to make available for the general reading public (and he in fact sold to a police officer) a book that the trial judge found to have a potentially deleterious influence upon youth. The State insists that, by thus quarantining the general reading public against books not too rugged for grown men and women in order to shield juvenile innocence, it is exercising its power to promote the general welfare. Surely this is to burn the house to roast the pig. * * *
“ The incidence of this enactment is to reduce the adult population of Michigan to reading only what is fit for children ”.
In the case before us, the Legislature, in section 484-h did not establish any such standard as was set forth in the Michigan statute. It merely provided that a book dealing with illicit sex or sexual immorality may not be sold to minors under 18.
The defendants argue that the statute in question, if upheld, can limit the reading material available to high school children. They overlook the fact that section 484-h is aimed at commercial distribution of salacious reading matter. It is aimed at the one who is engaged in selling filth for profit and not against the lawful use of books for educational purposes.
In the recent case of People v. Fritch (13 N Y 2d 119, 121) Judge Scilbppi points out that as the dissemination of obscene material has become more widespread, there has been an increased awareness of the serious problem it creates. He cited the “Statement on Salacious Literature ” by the New York Academy of Medicine Committee on Public Health, wherein the Academy stated :
“ On the basis of the incomplete information submitted to it, the Academy is of the opinion that the reported increase in sales of salacious literature to adolescents is one of a number of social ills reflecting a breakdown in the home and an inadequate environment. Since adverse forces seem to be concentrated on teenagers, deliberations on the problem were limited to effects of erotic literature on this age group.
*801 “ The Academy believes that although some adolescents may not be affected by the reading of salacious literature, others may be more vulnerable. Such reading encourages a morbid preoccupation with sex and interferes with the development of a healthy attitude and respect for the opposite sex. It is said to contribute to perversion. In the opinion of some psychiatrists, it may have an especially detrimental effect on disturbed adolescents.”
Realizing that juvenile delinquency was on the increase and that something had to be done about it, the Legislature prior to 1955 held hearings before a Joint Legislative Committee on the effect of comic books and obscene prints, and, acting on the report of that committee, the Legislature enacted section 542 of the Penal Law (now § 484-h) and preceded such enactment with a statement of “Legislative Findings ” in section 540, as follows: “It is hereby declared that the publication, sale and distribution to minors of comic books devoted to crime, sex, horror, terror, brutality and violence, and of ‘ pocket books ’, photographs, pamphlets, magazines and pornographic films devoted to the presentation and exploitation of illicit sex, lust, passion, depravity, violence, brutality, nudity and immorality are a contributing factor to juvenile crime, a basic factor in impairing the ethical and moral development of our youth and a clear and present danger to the people of the state. Therefore, the provisions hereinafter prescribed, are enacted and their necessity in the public interest is hereby declared as a matter of legislative determination ’ ’.
The court should give due recognition to legislative findings made after a long and diligent inquiry.
Because the future of our country depends upon the youth of today, it is the burden of our society to do all within its power to preserve the health and well-being of our youth. We must realize that a healthy youth spells a healthy future for our Nation. No one can question the right of a State to protect the physical well-being of minors and adolescents. Should it be said that a law which protects a minor’s body is constitutional, but that a law which seeks to protect his mind is not? It is just as important to protect youth against corruption and deterioration of their morals as it is to protect them against the deterioration of their bodies. Section 483-c prohibits the tattooing of a child under 16 years of age. We hold that it is just as important to protect a minor against an impression which salacious literature may make upon his mind as it is to protect him against an impression made upon his body by means of tattooing with indelible ink.
*802 The Legislature deemed it necessary to enact the statute “ in the public interest ” because the People of the State were confronted with “ a clear and present danger The Legislature found that the “exploitation of illicit sex”, etc., was a contributing factor to juvenile crime. We hold that the section in question is constitutional and represents the valid exercise of police power.
Nor is the section vague or indefinite. A reading thereof leads to the conclusion that it is sufficiently specific to apprise anyone of what the Legislature intended to prohibit.
The defendant Downs is chargeable with the actual sale of' the book to the complainant. The defendant, The Bookcase, Inc., is chargeable, as the owner of the store, with selling, showing or advertising for sale or distribution of the book in question. The defendant Weisfeld is chargeable with the sufferance of illegal acts committed by those in his employ (People ex rel. Price v. Sheffield Farms Co., 225 N. Y. 25, 29, 37; People v. Lewis, 138 App. Div. 673, 675).
The motions made by the defendants at the conclusion of the case, to dismiss the information, are denied as to each of them, and each defendant is found guilty.