STATE of Missouri, Respondent,

v.

Melvin K. SCHAMMA, Appellant.

No. 46610.

Missouri Court of Appeals,
Eastern District,
Northern Division.

Oct. 11, 1983.

Donald K. Gerard, Clayton, for appellant.

John Ashcroft, Atty. Gen., Kristie Green, Asst. Atty. Gen., Jefferson City, Thomas I. Osborne, Pros. Atty., Mexico, for respondent.

REINHARD, Judge.

Defendant was charged in a six count information. He was found guilty under Count I of promoting pornography in the second degree, § 573.030, RSMo.1978; under Count III of transferring a concealable firearm without a permit, § 571.080, RSMo. Supp.1983; and under Counts IV, V and VI of promoting pornography in the first degree, § 573.020, RSMo.1978. The jury assessed punishment at one year imprisonment on Count I, $1,000 fine on Count III, two years on Count IV, two years on Count V and three on Count VI. The court sentenced defendant in accordance with the jury verdicts and ordered the sentences served concurrently. He appeals his sentences under Counts IV, V and VI. We affirm.

The defendant operated a bar called Mr. Ed's Tavern in Farber, Missouri. On December 27, 1981, Robert Simcox, an undercover police officer, was retained by the sheriff of Audrain County to investigate the alleged sale of pornographic films. Pursuant to that investigation, the officer made a series of film purchases from defendant which culminated in defendant's arrest.

On December 27, 1981, the officer entered defendant's tavern and indicated an interest in purchasing films. Defendant produced three films wrapped in newspaper. He wanted thirty-five dollars a piece, but eventually sold all three for fifty dollars. When the officer inquired as to the consent of the films, the defendant replied that whatever was depicted on the film carton was in the film. The cover on each box did contain a color photograph. This sale was the basis for defendant's conviction for promoting pornography in the second degree, as set forth in Count I of the information.

During this transaction, the officer also asked if he could obtain additional films of this nature, and was advised by the defendant that defendant could obtain films of whatever the officer wanted and in whatever quantity desired. Consequently, on January 2, 1982, the officer inquired about purchasing films in quantities of at least ten. Officer Simcox explained that if defendant sold the films for less than thirty-five dollars apiece, Simcox could make more money since he had a good market. The parties thereafter agreed to the sale of ten films for twenty-five dollars each.

On January 9, 1982, the officer returned to the bar and, as previously agreed, purchased ten films from defendant for $250.00. The film transfer took place in defendant's truck, after defendant had driven some distance from the tavern. Each of the film reels involved in this transaction was in a box, with a photograph on the box cover. This purchase constituted the basis for his conviction for promoting pornography in the first degree, as set forth in Count IV.

On January 23, 1982, the officer purchased two additional films from defendant, which comprise Count V. Again, the box cover for each film contained a photograph. During this transaction, officer Simcox asked defendant to sell him a large quantity of films—approximately 100 to 150 movies. Defendant agreed and set a price of $1731 for 100 films.

To close the sale, the officer went to the tavern late the following night; the transaction took place in the early morning hours of January 25, 1982. In the course of the transaction, defendant described the film as being the same type previously purchased by the officer, along with "some animal type film." Moreover, the defendant again reiterated that the photographs on the boxes depicted the nature of the films. In response to Simcox's statement that he was

reselling the films, defendant offered to replace any film that Simcox's customers found unsatisfactory since he did not like to sell bad merchandise.

The films involved in this transaction were brought into the tavern by defendant and another person in two cardboard boxes after closing hours. Defendant said there were eighty-four films, some being doubles, but he assured the officer that the number was equal to one hundred reels of film. Defendant demanded payment of $1851 for the films and instructed the officer to pay the other man. This sale comprised Count VI.

The defendant testified that he had never viewed any of the films. His comments to the officer about the film contents were based on what the pictures on the boxes depicted. Nevertheless, he testified that he did not want his tavern customers to know that he was selling such merchandise. That was why he wrapped the films in newspaper and why the other sales took place either away from the tavern or after it closed. He further contended that he had no reason to believe that Simcox was purchasing the films for anyone other than himself.

On appeal, defendant asserts that there is insufficient evidence of his wholesale promotion of pornographic materials, as is required to establish a violation of § 573.020. He contends that he should instead be charged with the misdemeanor of promoting pornography in the second degree. § 573.030, RSMo.1978.

Section 573.020 provides in pertinent part:

1. A person commits the crime of promoting pornography in the first degree if, knowing its content and character:
   (1) He wholesale promotes or possesses with the purpose to wholesale promote any pornographic material
   . . . .

· · · · ·

2. Promoting pornography in the first degree is a class D felony.

The thrust of defendant's argument is that this provision is intended to apply to mass distributors of pornography and, furthermore, that even if the provision is applicable to him, there is no evidence that he knew that the films were purchased for resale.

▇ The statute in this case defines "wholesale promote" as "to manufacture, issue, *sell,* provide, mail, deliver, transfer, transmute, publish, distribute, circulate, disseminate, or to offer or agree to do the same *for the purposes of resale.*" § 573.-010(6), RSMo.1978. (emphasis added). The definition makes no reference to the law's applicability to exclusively large scale distributors of pornography. Moreover, in its comment to § 573.010, RSMo.1978, the legislature has indicated that the "key words which distinguish 'promote' [a violation of § 573.030] from 'wholesale promote' [a violation of § 573.020] are 'for the purpose of resale.'" Nowhere does the legislature indicate any intent to limit the law's application to large scale operations. To the contrary, the comments indicate that the decisive factor is simply whether the defendant promoted the films in question for resale.[1] It is, therefore, clear that the case before us comes within the scope of the provision. We decline to read into the statute words that would limit its application to large scale operations only.

▇ Nor do we find merit to defendant's contention that the evidence is insufficient to establish that the purchases in question were made for resale. Defendant makes

---

1. We recognize that § 573.020 is patterned after New York Penal Law § 525.06 (McKinney 1980) (renumbered § 525.07 in 1982). The practice commentary which accompanies the New York statute states:

This offense, according to the Governor's memorandum of approval, 'is directed at the mass producers and distributors of obscene materials. The measure is designed to distinguish between the newsstand operator who sells one obscene magazine and a publisher or distributor who engages in the wholesale dissemination of obscene materials.'

The Comments to our statute have no such expression.

much of the fact that purchases subsequent to the initial misdemeanor transaction were at a higher per film basis. He contends that this destroys the inference of knowledge necessary to establish intended resale, since implicit in the term "wholesaling" is the notion that the wholesale price will be lower than that charged to the ultimate purchaser—Simcox in the initial sale. We find his point is groundless. The officer's testimony was that he could profit at any price under thirty-five dollars. Each of the subsequent transactions was for less than thirty-five dollars.

Contrary to defendant's claim, the evidence viewed in the light most favorable to the state shows the defendant possessed the requisite knowledge of intended resale. The police officer's testimony was that on January 2, 1982, he told the defendant that if he could obtain films for less than thirty-five dollars each, he "could make more money because [he] had a good market." This discussion set the tempo for later transactions. Defendant sold him ten films for twenty-five dollars apiece on January 9, 1982. On January 23, 1982, he sold the officer two additional films—each for less than thirty-five dollars. Again on January 25, 1982, he sold the officer what he said was the equivalent of one hundred films for a total of $1851—less than thirty-five dollars each. In the course of the last transaction, the officer reiterated that he was purchasing for resale, and the defendant, in response, offered to replace films that the officer's customers found unsatisfactory. From the evidence, taken together, we find a submissible case was made as to defendant's wholesale promotion of pornography.

■ Defendant also contends that his knowledge of the content and character of the films involved in Count V (the January 23, 1982 transaction) and Count VI (the January 25, 1982 sale) was not established. For his conviction on each count to stand, there must be evidence of scienter. *State v. Flynn,* 519 S.W.2d 10, 13 (Mo.1975). To do so, the state need only establish the defendant's knowledge of the content of the materials, not his knowledge of its obscene nature. *Id.*

■ Here, there is sufficient evidence to establish that defendant knew the content of the films he was distributing. The officer inquired as to the content of the films when he made his initial purchase. The defendant responded that the films were depicted on the front of the box; that the acts shown would be in the films. The officer then asked if he could purchase more films *of this nature.* Thus, it would be reasonable to infer that in all subsequent sales, including those of January 23 and 25, defendant provided films of the same pornographic nature. Indeed, defendant's own testimony supports this conclusion. At trial he stated that he did not want his tavern customers to know that he was selling "that kind of merchandise."

■ Furthermore, independent of defendant's statement, we find sufficient evidence to establish scienter of obscenity. It is well established that circumstantial evidence is sufficient to establish knowledge of the content of obscene materials. *State v. Smith,* 422 S.W.2d 50, 62 (Mo.banc 1967). Missouri courts, therefore, have held that knowledge of the photograph on the cover of obscene materials is sufficient to infer knowledge of the pornographic content. *See e.g. State v. Ward,* 512 S.W.2d 245, 246 (Mo.App.1974) (magazines); *State v. Hughes,* 508 S.W.2d 6, 7 (Mo.App.1974) (playing cards). In each case, the obscene material was sealed in clear plastic, but the cover contained a sexually explicit photograph. *State v. Ward,* 512 S.W.2d at 246; *State v. Hughes,* 508 S.W.2d at 7; *State v. Ward,* 512 S.W.2d 243, 244 (Mo.App.1974). Although sealed, the requisite knowledge was present, since "one could not be in possession of such a publication without possessing some knowledge of its contents." *State v. Vollmar,* 389 S.W.2d 20, 29 (Mo. 1965). Indeed, in *Hughes,* the court held that knowledge of the top card of the deck was sufficient, even though the deck was sealed in plastic and the defendant stated he was unfamiliar with the photographs on other cards. In reaching this conclusion,

the court stated: "It was reasonable to infer that [the defendant] was aware that the rest of the cards portrayed similar activities, although he may not have known the exact content of each card, and that is enough to support the conviction." *State v. Hughes,* 508 S.W.2d at 7.

█ Defendant admits that the films involved in the present case were pornographic. Moreover, he testified that the scene pictured on the boxes was depicted in the films. Here, the box covers of the films sold on January 23 (Count V) and January 25 (Count VI) had photographs depicting sexually explicit scenes. This evidence is sufficient to establish defendant's knowledge of his films' pornographic content.

Judgment affirmed.

DOWD, C.J., CRIST, J., and IVAN LEE HOLT, Special Judge, concur.