**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Joyce TRIPLETT, Defendant-Appellant.**

No. 14628.

Missouri Court of Appeals,
Southern District,
En Banc.

Nov. 7, 1986.

---

David Robards, Joplin, for defendant-appellant.

No appearance for plaintiff-respondent on appeal.

PER CURIAM.

Joyce Triplett was charged by amended information with the class A misdemeanor of promoting pornography in the second degree, § 573.030, RSMo 1978, as amended.

The incident leading to the filing of the charge was the sale of a November 1985 issue of Hustler magazine to a customer by Triplett, who was a clerk in a Jasper County, Missouri, convenience store. After jury trial, Triplett was found guilty and fined $250.

Triplett appealed, but failed to timely file a brief, in violation of Rule 30.06(k).[1] This court did not excuse the violation, or allow an out of time filing of a brief, as no good cause was shown for the dilatory conduct of defendant's counsel. Although dismissal of the appeal may have been justified under Rule 30.09(b) for unexcused violation of court rules, we did not do so as we did not wish to penalize the defendant for her lawyer's dereliction of duty.

After consideration of the matter, and a review of the record, a divisional order was issued on August 27, 1986, affirming the conviction in accordance with Rule 30.25(b), which states that in a case in which the decision is unanimous, and all judges believe that no jurisprudential purpose would be served by a written opinion, disposition may be made by written summary order.[2]

On September 11, 1986, Triplett's attorney filed a motion for rehearing, which was sustained, and by order dated September 18, 1986, the case was transferred to the court en banc for consideration.

Our en banc review includes an examination of the information, jury verdict, and trial court sentence to see if they are legally sufficient, a reading of the testimony and examination of the exhibits introduced at trial to see if the evidence was sufficient to sustain the jury verdict, and a review of all actions and rulings of the trial court, in order to determine if Triplett's conviction is supported by fact and law. We also consider all allegations of trial court error made by Triplett's counsel in his after-trial motion for judgment of acquittal or, in the alternative, for a new trial, which was filed after the jury verdict was returned, but before judgment and sentence were entered by the trial court.

The amended information, on which Triplett was tried, charges that Joyce Triplett, "in violation of Section 573.030, RSMo., committed the Class A misdemeanor of promoting pornography in the second degree, punishable upon conviction under Sections 558.011.1(5) & 560.016 RSMo., in that on or about September 19, 1985, in the County of Jasper, State of Missouri, the defendant knowing the content and character promoted pornographic material for pecuniary gain, such material consisting of a magazine to-wit: The November 1985 issue of 'Hustler.'"

The information faithfully tracks the language of § 573.030.1(1), and is legally sufficient. Subsection 2 of the statute provides that promoting pornography in the second degree is a class A misdemeanor.

The fine of $250 imposed as punishment after conviction was within the statutory limits of § 560.016.1 which provides that a fine imposed after conviction of a class A misdemeanor shall not exceed $1,000.

We have examined the trial court's judgment and sentence filed on January 9, 1986, and find it to be in the form prescribed by law.

We next turn to the evidence presented in the case in order to see if a submissible case was made. The evidence presented in the state's case in chief consisted of the

---

1. Unless otherwise indicated all references to rules are to Missouri Rules of Court, V.A.M.R., and all references to statutes are to RSMo 1978, V.A.M.S.

2. The review undertaken in division was of the record as a whole, including, but not limited to, claims of error made in defendant's post-trial motion for new trial.

testimony of Gary Wheat and the introduction into evidence of state's exhibits, including exhibit 2. Exhibit 2 is the Hustler magazine which is the subject matter of the charge of promoting pornography. Wheat testified that on September 19, he, accompanied by Len Clevenger, went to Bridgeman's One Stop convenience store, where he saw a magazine display rack which contained a number of magazines, including the one in question. Wheat was able to observe the covers of the magazines that were on the rack. There was no wrapper on the magazines, and they were located at eye level where he could easily see the bulk of the covers. He looked through the Hustler magazine and an issue of Genesis Letters magazine, and took them to the checkout counter where Joyce Triplett was working. She "looked at the magazines" which were placed in front of her, and priced them at $8.34, which Wheat paid by check. Triplett placed the magazines in a paper sack and gave it to Wheat, who then left the store.

In her defense testimony, Triplett admitted selling the Hustler magazine to Wheat on the day in question, but contended "[i]t was wrapped in cellophane completely" when she sold it to him. She said she had no idea of what the contents of the magazine were, as she had not looked through it. On redirect examination by her lawyer, she admitted that she would not sell the Hustler magazine to a minor, and that it was part of her duties "to be sure that minors don't get ahold of these."

In rebuttal, Leonard Clevenger was called as a witness by the state, and testified the Hustler magazine was not wrapped in cellophane when it was purchased by Wheat.

Since Wheat's testimony in the state's case in chief that Triplett "looked at" the magazines, which had been placed before her on the counter "cover up" does not conclusively establish that Triplett viewed the interior contents of the Hustler magazine before she sold it to Wheat, we confine our conclusions as to knowledge on Triplett's part of the contents of the magazine to the undisputed evidence that she looked at the cover before selling the magazine, and had, by her statement, not viewed its contents.

■ As used in § 573.030, "promoting pornography" is defined as "means to manufacture, issue, sell, . . . ." § 573.010(11). There is no dispute as to whether Triplett sold the magazine to Wheat. The question is whether Triplett's viewing of the cover of the Hustler magazine, before selling it to Wheat, constituted knowledge on her part of the content of the magazine. Since knowledge, often couched in the legal sense as scienter, is a necessary element of the statute defining the crime, the state must establish, through evidence, defendant's knowledge of the magazine's contents.

■ Circumstantial evidence is sufficient to establish such knowledge, and knowledge of a photograph on the cover of magazines, *State v. Ward,* 512 S.W.2d 245, 246 (Mo.App.1974), and the top card of a sealed deck of playing cards, *State v. Hughes,* 508 S.W.2d 6, 7 (Mo.App.1974), has been held to establish knowledge of the content of the offending publication. *See also State v. Schamma,* 659 S.W.2d 589, 592 (Mo.App. 1983). The common thread running through all of these cases is that, if the cover is sexually explicit knowledge of the cover is sufficient to infer knowledge of the character of the content. *State v. Schamma,* supra, at 592.

We, therefore, turn to the cover of the Hustler magazine in question, a copy of which is attached hereto and marked as exhibit "A," to see if it is sufficient to infer knowledge of the contents. The photograph shows a young blonde woman lying on her stomach. She is wearing a blue sheer garment which is pulled up to reveal almost all of her gluteus maximus, plus a generous portion of labia of her genitalia, with surrounding pubic hair. The cover contains the following printed blandishments to look inside: "NEW, EXPANDED SEX LETTERS—THE HOTTEST STORIES HUSTLER EVER PRINTED," "PRISON RAPE PICTORIAL," and

"PHONE SEX FICTION." The cover also contains the following: "Warning: material of an adult nature. This literature is not intended for minors, and under no circumstances are they to view it, possess it or place orders for merchandise offered herein."

█ Explicit sexual material is defined in law as including pictorial material depicting human unclothed genitals or emphasizing the depiction of post-pubertal human genitals. § 573.010(3). The photograph in question fits that category, and when coupled with the blatant nature of the advertising material on the cover, plus the warning that the contents were of such nature that they could only be viewed by adults, gave Triplett notice of the contents of the magazine, and so established the necessary element of scienter. As is stated in *State v. Vollmar*, 389 S.W.2d 20, 29 (Mo.1965), "[o]ne could not be in possession of such a publication without possessing some knowledge as to the nature of its contents."

█ In her motion for new trial, Triplett contends that the state had to prove that she knew the magazine was "pornographic" at the time she sold it to Wheat. That is not a correct statement of the law, as it matters not what she thought about the magazine, as individual tastes differ. The test is what the people of Jasper County, as represented by the jury, thought, after hearing the testimony, viewing the exhibits, and receiving proper instructions, including the admonition that they were to judge the magazine by contemporary community standards, aided by definitions of the words pornographic, prurient, and sexual conduct.

Pornographic is defined in § 573.010(9) as follows:

(9) **'Pornographic,'** any material or performance is pornographic if, considered as a whole, applying contemporary community standards:

(a) Its predominant appeal is to prurient interest in sex; and

(b) It depicts or describes sexual conduct in a patently offensive way; and

(c) It lacks serious literary, artistic, political or scientific value.

In determining whether any material or performance is pornographic, it shall be judged with reference to its impact upon ordinary adults;

Sexual conduct is defined in subsection (13) of the same statute as:

(13) **'Sexual conduct'** means acts of human masturbation; deviate sexual intercourse; sexual intercourse; or physical contact with a person's clothed or unclothed genitals, pubic area, buttocks, or the breast of a female in an act of apparent sexual stimulation or gratification;

Prurient, although not defined in the statute, was defined by the Supreme Court of the United States in *Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 496, 105 S.Ct. 2794, 2798, 86 L.Ed.2d 394, 401–402 (1985), as a shameful or morbid interest in nudity, sex, or excretion.

MAI–CR2d 33.01 contains definitions of pornographic and, as applied to chapter 573 of the statutes, sexual conduct, which definitions are exactly the same as those used in § 573.010(9) and (13).

█ Instruction No. 6, submitted by the trial court, defined "pornographic" and "sexual conduct" in identical language to that used in MAI–CR2d 33.01 and § 573.010(9) and (13) and defined "prurient" in identical language to that approved by the Supreme Court of the United States in *Brockett.* The fact that the word "prurient" is not defined in MAI–CR2d 33.01, but was defined in instruction No. 6, does not constitute error, as the definition used in instruction No. 6 was correct, and could not have prejudiced Triplett. The jury was properly instructed as to the definitions in question.

The verdict-directing instruction (No. 5) is taken directly from MAI–CR2d 27.04, the pertinent part of which reads as follows:

If you find and believe from the evidence beyond a reasonable doubt:

First, that on or about September 19, 1985, in the County of Jasper, State of

Missouri, the defendant promoted certain material for pecuniary gain, consisting of a magazine to-wit: the November 1985 issue of 'Hustler', and

Second, that such material was pornographic, and

Third, that the defendant at that time knew the content and character of the material,

then you will find the defendant guilty of promoting pornography in the second degree.

However, if you do not find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

It was a jury issue as to 1) whether Triplett knew the content and character of the magazine, and 2) that it was pornographic, as that term and inclusive terms are defined in instruction No. 6. It determined that she did, and it was.

■ We have examined the magazine and its contents. We endorse the views expressed in *People v. Bookcase, Inc.*, 40 Misc.2d 796, 244 N.Y.S.2d 297, 300 (N.Y. Crim.Ct.1963), rev'd on other grounds, 14 N.Y.S.2d 409, 252 N.Y.S.2d 433, 201 N.E.2d 14 (1964), where it is said that "Filth, even if wrapped in the finest packaging, is still filth." Graphic slick colored photographs of homosexual and heterosexual intercourse, and forms of deviate sexual practices are the rule, rather than the exception, in the magazine. Scenes depicting gang rapes, fellation, cunnilingus, ejaculation, etc., abound. The reading material would make a buzzard throw up. The magazine contains ads praising the virtues of various vibrators and other sexual stimulators, as well as the solicitations of prostitutes, who promise every conceivable kind of sexual favor for money.

The jury had every legal right, under the evidence, applying contemporary community standards, to find that the magazine was pornographic. *See State v. Cox*, 619 S.W.2d 794, 796 (Mo.App.1981), cert. denied 455 U.S. 976, 102 S.Ct. 1485, 71 L.Ed.2d 688 (1982). *See also U.S. v. Entringer*, 401

F.Supp. 773, 774 (E.D.Mo.1975), affirmed 532 F.2d 634 (8th Cir.1976), cert. denied 429 U.S. 820, 97 S.Ct. 67, 50 L.Ed.2d 81.

■ Proof that Triplett sold the two magazines, one of which is the basis for the charge here, for the sum of $8.34, was proof that she sold the Hustler magazine for pecuniary gain, which is one of the statutory elements to be proven. It matters not that Triplett was not the owner of the store, or that she did not receive the profit from the sale of the magazine. She was a paid clerk, who was waiting on customers. That is all the state had to prove on the pecuniary gain issue. *State v. Cox*, supra at 796–797.

One might ponder why the prosecutor chose to file on the clerk, instead of the store's owner, but that was his decision, not ours, and he had a right to charge the clerk, if he wished, as clerks are not exempted from the prohibitions of the statute.

■ We have reviewed all other claims of error raised in Triplett's motion for new trial, including her claim that the statutes under which she was convicted are facially unconstitutional because they are overbroad, ambiguous, and vague. This argument has no merit. Claims concerning statutes similar to ours have been consistently rebuffed by Missouri and federal courts. *See State v. Hollins*, 533 S.W.2d 231, 233 (Mo.App.1975), and *State ex rel. Wampler v. Bird*, 499 S.W.2d 780, 784 (Mo.1973). Our pornography statutes follow the approved pattern set out in *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). *See*, Appendix to Chapter 573.

After a full review of the record, we find no error, plain or otherwise.

Judgment affirmed.

All concur, except PREWITT, J., who dissents.

CROW, C.J., and FLANIGAN and MAUS, JJ., concur and file concurring opinions.

PREWITT, J., dissents and files dissenting opinion.

APPENDIX

CROW, Chief Judge, concurring.

I concur, but am constrained to add the following postscript.

As amply demonstrated by the articulate per curiam opinion and the graphic exhibit appended thereto, the appeal is patently

void of merit and, in my judgment, the conviction should have been affirmed by summary order per Rule 30.25(b). Judicial time is a non-expandable commodity and, given the large number of appeals presenting truly justiciable issues demanding extensive study and careful discussion, the measure of judicial effort expended on this case can ill be afforded.

FLANIGAN, Judge, concurring.

I concur in the principal opinion. However, I register my strong objection to the attachment of the cover of the Hustler magazine to that opinion as Exhibit A. It was, of course, necessary for the jury, the trial court, and this court to inspect the magazine and its cover, but it is not necessary that the latter defile the South Western Reporter.

I disagree with Chief Judge Crow's statement that "the conviction should have been affirmed by summary order per Rule 30.-25(b)." Although I do not excuse the conduct of appellant's counsel in failing to file appellant's brief on time, I think this case required disposition on its merits.

I also feel that an injunction action against the store owner might more appropriately have advanced the public interest in the event the prosecutor felt that in a criminal action against the store owner it might be difficult to prove the owner's knowledge of the content and character of the pornographic material.

MAUS, Judge, concurring opinion

I concur in the reasoning and result of the majority opinion. I do not think the exhibit is necessary or appropriate. I dissent from its incorporation in the majority opinion and object to its incorporation in the dissenting opinion.

PREWITT, Judge, dissenting.

This decision condemns not Hustler magazine or its publisher, who may well deserve it, but Joyce Triplett, a clerk in a convenience store who, in the course of her job, sold a Hustler magazine to an adult. Her only duty in connection with that magazine was to collect its purchase price. It is Miss Triplett and not the magazine, its publishers, its distributor, or her employer, who is forever branded as one who promotes pornography.

In order to commit the crime of promoting pornography in the second degree, the law requires that it be proven beyond a reasonable doubt that the defendant sold the magazine "knowing its content and character". § 573.030, RSMo 1978. Obviously this requires that the seller must *know* the "content" of the magazine and the "character" of the contents. There was no evidence that defendant knew either.

The per curiam opinion states that she should have known its contents were pornographic by the cover. The actual cover is in color and the uncolored copy attached to the per curiam opinion, as well as its description, is misleading as to the extent of the clothing worn. For that reason, I have attached a copy of the magazine cover in color.[1]

You cannot, as the per curiam opinion concludes, tell a magazine or a book by its cover. Many covers and other forms of advertisement imply more than the contents include. The reverse may be true for this magazine, but defendant would not necessarily know that.[2]

1. Even the color copy is not entirely accurate, but more so than an uncolored copy. Because of the cost of color reproductions, only the original of this opinion contains one. In response to a telephone inquiry to West Publishing Company, who publishes the official reports of this court, I was advised that they cannot reproduce the cover in color.

2. I agree that much of the material depicted in the magazine is offensive and, disregarding other issues, including serious constitutional questions, a jury could be justified in finding the magazine pornographic as that term is defined in Missouri. As in my view the nature of the contents need not be discussed in order to properly dispose of this matter, I saw no need to waste "judicial time" to read it in order to analyze in detail the magazine's contents or consider, as did the per curiam opinion, its effect on buzzards.

Miss Triplett looked at the magazine only long enough to determine its price. Although the purchaser was well versed in pornography, he could not tell from its cover whether it contained pornographic material. He "looked through" it to make that determination. The purchaser, a member of "Citizens for Decency through Law", had read "the law" on pornography, and was going to convenience stores and examining their magazines to determine if they were pornographic. He was better qualified to recognize pornography than Joyce Triplett. Had the cover been pornographic or if it had indicated, beyond a reasonable doubt, that pornographic material was contained in the magazine, why would the purchaser have performed the disagreeable task of looking through it to determine if it was pornographic?[3]

The per curiam opinion cites *State v. Ward*, 512 S.W.2d 245 (Mo.App.1974); *State v. Hughes*, 508 S.W.2d 6 (Mo.App. 1974); and *State v. Schamma*, 659 S.W.2d 589 (Mo.App.1983), stating that the "common thread running through all of these cases is that, if the cover is sexually explicit knowledge of the cover is sufficient to infer knowledge of the character of the content."

In *Ward*, the magazine showed "on the front a man and woman in an act of fellatio and on the back a life-sized photograph of a penis partly inserted into a vagina." 512 S.W.2d at 246. *Hughes* involved the sale of playing cards with the exposed top card showing "a color closeup of a penis partially inserted into a vagina." 508 S.W.2d at 7. In *Schamma*, films were sold which had photographs "depicting sexually explicit scenes" on the top of their cartons. There was also evidence that the defendant knew the contents of the films. 659 S.W.2d at 592–593. The relatively mild cover here and the lack of proof of defendant's knowledge of the magazine's contents prevent those cases from supporting this conviction.

In a similar case involving the sale of a Hustler magazine, a part owner of a store was shown the cover just before he was paid for the magazine. This was held insufficient to prove that he knew the contents of the magazine. The conviction for disseminating obscene matter was reversed and judgment entered for the part owner. See *Commonwealth v. Rosenberg*, 379 Mass. 334, 398 N.E.2d 451 (1979). This was a stronger case for the state than the present one. Perhaps an owner has an obligation to know what is being sold, but not a clerk whose duties were to stock groceries and operate the cash register. Servicing the magazine rack was the exclusive duty of the magazine distributor.

The per curiam opinion states that the cover here "fits" the definition in § 573.-010(3), RSMo Supp. 1985, of "Explicit sexual material" because it is "depicting human unclothed genitals or emphasizing the depiction of post-pubertal human genitals." Obviously it does not. The subject of the cover photograph, apparently a female, did not have unclothed genitals. Perhaps the genital area was emphasized, but genitals were not exposed or depicted. Although the cover is suggestive, it could hardly be described as sexually explicit. If those concurring in that opinion believe that the cover is explicit sexual material, I am surprised that it was made a part of the opinion and thus, on their theory, further distributed pornography.

Moreover, § 573.010(3), defining "Explicit sexual material", is not related to this charge. It pertains to the crime of public display of explicit sexual material. See § 573.060, RSMo 1978. "Explicit sexual material" is not used to define "pornographic". See § 573.010(9), RSMo Supp. 1985. Nor does it appear in the charge against defendant. Simply put, § 573.-010(3) has no relevance to this matter and the reliance on it in the per curiam opinion is misplaced.

The per curiam opinion emphasizes that the cover contained the language "Warn-

---

**3.** He also did not explain why, after he made the determination that the magazine was porno-

graphic and purchased it, he read at least part of an article in it.

ing: material of an adult nature. This literature is not intended for minors, and under no circumstances are they to view it, possess it or place orders for merchandise offered herein." Of course, there was no proof that Joyce Triplett did or even could have read the fine print of that warning, but even so such a warning implies that it is legal to sell such a magazine to an adult, as occurred here. Some states, including Missouri, have special statutes which would prohibit the sale of magazines to minors that may be legally sold to adults. See § 573.040, RSMo 1978; § 573.010(10), RSMo Supp. 1985. See also *American Booksellers Association v. Webb*, 40 Crim.L. Rep. (BNA) 2065 (N.D.Ga.1986).

There are similar warnings regarding movies shown in theaters and on television, including some movies that no reasonable person would contend were pornographic. If such a warning is notice that pornographic material is contained, then to avoid committing a crime, a cashier in a movie theatre is required to view every "R" rated film, even if distasteful to that person, to evaluate its contents before selling tickets to adults. Such a requirement is not feasible. The warning adds nothing to the state's case.

Several things could have led Miss Triplett to believe that the sale of the magazine was not illegal. Hustler is apparently sold all across the country, as news reports regarding it are frequently carried in the media and such widespread distribution could cause defendant to think that its sale was legal. She could reasonably have expected that if her employer was openly selling material in violation of the law, criminal or injunctive actions would have been brought against those who profit from the sales and not against a $3.50 an hour clerk.

Defendant might have also been aware, as has been well publicized, that a television performer has shown an excerpt from Hustler magazine on his show and sent it with a request for funds to potential supporters of the enterprises he promotes. See *Hustler Magazine, Inc. v. Moral Majority, Inc.*, 796 F.2d 1148 (9th Cir.1986).[4]

Also, even had she examined the contents, defendant would have learned that the magazine contains a subscription form for ordering it by mail and apparently it can be received that way not only in the United States but by military personnel overseas.

My colleagues who feel that judicial time was wasted by the opinions in this matter should recall that opinions are frequently written here and in other courts on matters of much less concern to the legal system and the public. This district did not dispose of a matter by summary order under Rule 30.25(b) during the last fiscal year, July 1, 1985 through June 30, 1986, and has not since. I did not check previous to July 1, 1985, although I recall it has been used here at least once since summary orders were authorized in 1983. Perhaps we should use this rule more often, but this case is not appropriate as a "jurisprudential purpose would be served by a written opinion". See Rule 30.25(b).

Joyce Triplett has been branded as one who promotes pornography, a stigma which probably would be revealed should she be involved in any type of future litigation, as a party or a witness, or in connection with inquiries as to whether or not she has ever been convicted of a crime. To convict her on such evidence is erroneous, but to suggest that we deny her a full review of that conviction is even more wrong. She was entitled to at least the judicial consideration that she received, and perhaps more.

In addition, judicial time and the time of law enforcement agencies might better be expended in the determination of serious felony cases and litigation involving children. Extensive judicial time has already been spent at the trial level and in this appeal and to encourage such groundless

---

**4.** The excerpt described in that case appears at least as offensive to me as the material in the

magazine described in the per curiam opinion.

prosecutions as occurred here only fosters the waste of judicial time.

The decision here puts an unrealistic, if not impossible burden on many employees. To be protected from criminal prosecution, a clerk where magazines or books are sold, movies are seen, or video tapes sold or rented, will have to check every magazine or book with a suggestive cover, or every movie or video tape with suggestive advertisements or warnings to make a determination whether any of them are pornographic. That this would be an impossible task is shown by the record here. It was uncontroverted that following Miss Triplett's arrest an inquiry was made of the prosecuting attorney as to what magazines could be sold. He was unable to say.

The per curiam opinion eliminates the express requirement in § 573.030, RSMo 1978, that to be found guilty defendant must have sold the magazine "knowing its content and character". I believe that the jury and perhaps even some of my colleagues, however well intentioned, have permitted their sentiments regarding the magazine's contents to color their thinking. They appear to have overlooked that it was not Hustler magazine on trial, but Joyce Triplett.

I respectfully dissent.