**STATE of Missouri,**
**Plaintiff–Respondent,**

v.

**Paul BISHOP, Defendant–Appellant.**

**No. 16041.**

Missouri Court of Appeals,
Southern District,
Division Two.

Nov. 8, 1989.

Motion for Rehearing or Transfer
Denied Nov. 28, 1989.

Application to Transfer Denied
Jan. 10, 1990.

Samuel J. Short, Jr., Stockton, for defendant-appellant.

Michael L. Ash, Stockton, for plaintiff-respondent.

FLANIGAN, Presiding Judge.

The trial court, after a nonjury trial, found defendant Paul Bishop guilty of promoting obscenity in the second degree, § 573.030, RSMo 1986, as amended, a class A misdemeanor, and assessed a fine of $400. Defendant appeals.

Defendant's first point is that the trial court erred in receiving into evidence, over defendant's objection, state's Exhibit 4, a "VCR tape," "because the chain of custody was not complete and did not offer reasonable assurance that [Exhibit 4] was the same VCR tape obtained from defendant, or if it were (sic), that it was in the same condition as when obtained from defendant."

The information was in two counts. Count I charged the defendant with selling an obscene videotape on February 20, 1988,

in Cedar County. The trial court acquitted defendant on Count I.

The conviction was based upon a finding of guilty on Count II. In addition to its formal parts, Count II charged "that on or about March 1, 1988, in the County of Cedar, Sate (sic) of Missouri, the defendant, knowing its content and character, promoted obscene material for pecuniary gain, such material consisting of a videotape depicting obscene material or performance."

The principal witness for the state was Stanley Gray who was doing undercover work for Joe Shearrer, Sheriff of Cedar County. Gray testified that on February 20, 1988, he purchased a videotape from defendant at the Red Bull Exchange in El Dorado Springs. Defendant worked at the Red Bull, which was owned by his son. Gray also testified that on March 1, 1988, he purchased another videotape from defendant at the Red Bull.

According to Gray, both of the sales followed the same procedure: Gray would obtain possession of the tape from defendant, Gray would turn the tape over to Deputy Sheriff Mark Hayes, Hayes would view the tape in Gray's absence and advise Gray that he had done so, and Gray would return to the Red Bull and pay defendant for the tape. Hayes delivered each tape to Sheriff Shearrer.

The cornerstone of defendant's argument in support of his first point is that Deputy Hayes did not testify. Gray testified he received each tape from defendant and turned it over to Hayes, and Sheriff Shearrer testified he received each tape from Hayes. The failure of the state to produce Hayes constituted, defendant argues, a missing link in the chain of custody of the tape.

State's Exhibit 4, introduced into evidence over defendant's objection, included a videotape which was an internal component of a plastic cassette. The cassette bears the label, "Battle of the Titans." The label also contains a logo of the letters "AVC," below which are the words "Adult Video Corporation." The cassette fits snugly into a black plastic box. Exhibit 4 consisted of both the box and the cassette.

Stanley Gray testified that on March 1, 1988, he "just happened to be" in the Red Bull between 9:00 a.m. and 10:00 a.m. Defendant was sitting in a chair and defendant "brought up the matter of the tape being there." Defendant told Gray that the tape "was raunchier than the first one [Gray] got on February 20." Defendant said that this tape was one of better quality. Gray testified that the tape was under the chair where defendant was sitting. Defendant produced the box which contained the cassette. The box and its contents were in a brown paper sack. Gray told defendant he would take the tape and would be back later to pay him for it.

Gray testified that the cassette which he obtained from defendant bore the title "Battle of the Titans." Gray said he took the tape from the Red Bull and took it to the nearby home of Deputy Hayes and turned it over to Hayes. Gray then returned to his own home. After less than an hour had passed, Hayes telephoned Gray and told him to go to the Red Bull and pay for the tape.

On Gray's arrival at the Red Bull, about 10:55 a.m., "some people were in there." Gray and defendant waited for the people to leave and then conversed. Gray told defendant that the tape was of better quality than the one obtained on February 20 and that it was "just as raunchy" as defendant had said it was and that it was not a "second copy tape" like the tape purchased on February 20 had been.

Shown Exhibit 4 by the prosecutor, Gray testified that he could identify it as the tape which he bought on March 1, 1988, from defendant. Gray said that the tape contains a label "Battle of the Titans," and also has Sheriff Joe Shearrer's initials— "JS"—on it. Gray said the initials were not there when he obtained the tape from defendant. Gray said he paid defendant $12.50 for Exhibit 4.

Sheriff Shearrer testified that on the evening of February 20 Deputy Hayes delivered a tape to him and that on March 1 Hayes delivered another tape to him. Shearrer said, "That came about the same

way, I was called by Deputy Hayes and informed that Gray had made another purchase of another tape. Hayes had it in his possession. He brought it down and turned it over to me and I placed it in the evidence locker."

Shearrer further testified that Exhibit 4 "is the tape that was handed over to me by Deputy Hayes. I have examined the contents of the tape. It contains a VCR, 'The Battle of the Titans,' is marked 3–1–88, and I have my initials on it. I got it from Hayes on March 1."

Sheriff Shearrer also testified that he viewed the tape at that time and it contained video pictures of "male and female subjects" engaged in sexual acts.

The state then offered Exhibit 4 into evidence. At the same time the state offered Exhibit 3, which was the videotape on which Count I was based. The following then occurred:

"MR. SHORT: Your Honor, I would object to their admission. First, as to the chain of custody. There is no testimony or sufficient chain of custody without Mr. Hayes' testimony testifying that these are, in fact, the tapes which he received from Stanley Gray. I feel that under the circumstances there is a lack of a sufficient evidence or correspondence with the crime charged to show that these tapes, in fact, came from the Red Bull Exchange and for that reason feel that they have not been specifically or sufficiently identified and would oppose their admission into evidence.

THE COURT: For the purpose of admission of evidence, the Court believes the State has made a sufficient showing and that Stanley Gray has identified these particular containers with film inside of them as being the containers he purchased from the Red Bull. So the objection is overruled. State's Exhibit 3 and 4 are received into evidence."

Later in the trial, the trial court viewed the videotape contained in State's Exhibit 4. The court made the following statement:

"Court, also, viewed in entirety State's Exhibit No. 4, being referred to as the tape labeled—well, all right, tape labeled 'Battle of the Titans,' *apparently a professionally produced adult video corporation tape, apparently the original of that.* And the Court viewed that from 4:38 p.m. through 5:57 p.m. in its entirety. So the Court now resumes on the record." (Emphasis added.)

Later in its findings the court summarized the contents of the videotape portion of Exhibit 4 and found the videotape to be obscene. Defendant has not challenged that finding.

In his argument in support of his first point defendant says:

"At the time of trial, although he had placed no identifying marks on the VCR tape and had never viewed the video content, Stanley Gray purported to identify State's Exhibit 4 as the tape he had obtained from the Red Bull Exchange. Stanley Gray's identification thereof is totally flawed. The only thing that can be said with regard to his identity of State's Exhibit 4 as being that which he gave to Deputy Mark Hayes is that it is a black tape cartridge with what appears to be the same commercially printed label as one which he gave to Mark Hayes. Anything beyond that is based upon conjecture and speculation on the part of Stanley Gray."

"[W]hen demonstrative evidence is offered, an adequate foundation for admission requires that the object offered is the object in controversy and remains in a condition substantially unchanged. The foundation entails the testimonial delineation of the chain of custody of the item with sufficient completeness 'to render it improbable that the original item has either been exchanged with another or has been contaminated or tampered with.'" *State v. Price,* 731 S.W.2d 287, 290 (Mo.App.1987). "A complete chain of custody, however, is not a requirement of a perfect chain of custody." *Storm v. Ford Motor Company,* 526 S.W.2d 875, 878 (Mo.App.1975).

"The sufficiency of evidence establishing a chain of custody is a matter addressed to the sound discretion of the trial court, with

a purpose of demonstrating there has been no improper tampering with the exhibit." *State v. Murray*, 630 S.W.2d 577, 581 (Mo. banc 1982). Chain of custody is an irrelevant issue where the exhibit is positively identified. *State v. Ingram*, 607 S.W.2d 438, 441 (Mo.1980). See also *State v. Sherrill*, 657 S.W.2d 731, 736 (Mo.App.1983). "Chain of control, as such, is only a relevant issue where the exhibit itself is not susceptible to positive identification in a singular sense." *State v. Granberry*, 484 S.W.2d 295, 300–301 (Mo. banc 1972).

"It is not necessary that some witness must have continually watched an exhibit or kept it in his personal possession. The purpose of the chain of custody requirement is to prevent tampering or alteration of exhibits or any substitution." *State v. Rose*, 428 S.W.2d 737, 740 (Mo.1968). "The evidence need not exclude every possibility that something in the interim of police possession disturbed or interfered with the exhibit. It is sufficient if the evidence shows reasonable assurance that it was the same and in the same condition." *State v. Baines*, 394 S.W.2d 312, 316 (Mo.1965). See also *State v. Sherrill, supra,* at 736.

■ Gray identified Exhibit 4 as the tape which he bought on March 1. The cassette contains the label, "Battle of the Titans." The label also contains a logo. Gray turned Exhibit 4 over to Hayes who later the same day delivered Exhibit 4 to Sheriff Shearrer. Shearrer testified that the cassette contained the label, "Battle of the Titans." The trial court examined the cassette and viewed the tape. The tape itself was labeled, "Battle of the Titans." The court observed that the tape was "apparently the original" of a "professionally produced adult video corporation tape." Defendant makes no claim that the tape itself bears any physical evidence of tampering or alteration. The content of the tape bore the same label as that appearing on the cassette. This court holds that the trial court did not abuse its discretion in receiving Exhibit 4 into evidence. Defendant's first point has no merit.

■ Defendant's second point is that the evidence is insufficient to support the conviction on Count II "because there was no substantial evidence for the court to find, beyond a reasonable doubt, that the defendant had knowledge of the content *and* character of the material promoted."

"A person commits the crime of promoting ... obscenity in the second degree if, knowing its content *or* character, he: ..." § 573.030.1, effective 7–15–87 (emphasis added.) In its pre–1987 version that portion of the statute used the phrase "knowing its content *and* character."

Defendant seems to place emphasis on the fact that the amended information, on which this case was tried, uses the language of the pre–1987 version. The fact is that the prosecutor requested leave to amend the information to change the word "and" to the word "or" in each of the two counts. The court granted leave to amend. In making the amendments by interlineation the prosecutor properly changed the wording of Count I, but in Count II, by inadvertence, he changed the word "and" to "or" in another place in Count II rather than in the place where the correction should have been made. Even assuming that the state, in this circumstance, had to prove knowledge of both content and character, this court holds that the evidence was sufficient.

The element of knowledge required by § 573.030 may be established by circumstantial evidence. *State v. Simmer*, 772 S.W.2d 372, 374 (Mo. banc 1989); *State v. Triplett*, 722 S.W.2d 633, 636[2] (Mo.App. 1986); *State v. McKinney*, 718 S.W.2d 583, 586 (Mo.App.1986). "[S]uch evidence may be comprised of any evidence that makes reasonable the inference that the ultimate fact exists." *State v. McKinney, supra,* at 586. "It is permissible to infer knowledge of pornographic content from all the relevant and admissible facts in the case." *Id.*

In a jury waived case the finding of the trial court "shall have the force and effect of the verdict of a jury." Rule 27.01(b), V.A.M.R. On the issue of the sufficiency of the evidence to show scienter, this court considers the evidence and all inferences reasonably to be drawn therefrom in the light most favorable to the state and dis-

regards all contrary evidence and inferences. "The test is whether the evidence, so viewed, was sufficient to make a submissible case from which [a rational trier or triers of the facts] could have found beyond a reasonable doubt that defendant was guilty." *State v. Cooley,* 766 S.W.2d 133, 135–136 (Mo.App.1989). "It is constitutionally sufficient that the prosecution show that a defendant had knowledge of the contents of the materials he distributed, and that he knew the character and nature of the materials. To require proof of a defendant's knowledge of the legal status of the materials would permit the defendant to avoid prosecution by simply claiming that he had not brushed up on the law." *Hamling v. United States,* 418 U.S. 87, 123, 94 S.Ct. 2887, 2910–2911, 41 L.Ed.2d 590, 624 (1974).

Gray testified that on February 20, 1988, he asked defendant about "party movies" and "dirty movies." Defendant told Gray that he had a tape containing "pornographic or raunchy material." Such a tape was delivered to Gray by defendant at that time. It was entitled, "The Best Little Whorehouse in Hong Kong." Later, when Gray paid defendant for that tape, Gray told defendant that the tape "was as raunchy" as defendant said it was.

On March 1, the date of the instant offense, defendant told Gray that he had another tape, Exhibit 4, which was "raunchier" than the tape delivered in the February 20 transaction. Exhibit 4 was not on public display in the Red Bull but was wrapped in a brown paper sack and was "sitting under [defendant's] chair." Later, on Gray's return trip to the Red Bull during which he paid defendant for Exhibit 4, Gray told Bishop that Exhibit 4 "was just as raunchy as what he said the film was." At that remark defendant "just kind of chuckled or laughed."

This court holds that there was sufficient evidence for the trial court to have found that defendant had knowledge of the content and character of Exhibit 4 during the course of the sale transaction of Exhibit 4. See *State v. Schamma,* 659 S.W.2d 589

(Mo.App.1983). Defendant's second point has no merit.

The judgment is affirmed.

MAUS and PREWITT, JJ., concur.